## Case No. 10,993.

### PEROTS et al. v. UNITED STATES.

[1 Pet. C. C. 256.] [1]

Circuit Court, D. Pennsylvania. April Term, 1816.

#### CUSTOMS DUTIES—CONSTRUCTION OF ACTS—IMPORTATION.

1. The cargo of an American vessel, which arrived at Philadelphia on the 16th June, 1812, from British possessions in India, where the owner of the cargo had been obliged to give a bond to land the cargo in the United States, is not liable to double duties, under the act of congress passed the 1st of July, 1812 (4 Laws U. S. [B. & D.] 459; [2 Stat. 768]).

2. Construction of Acts Cong. July 5, 1812 (4 Laws U. S. [B. & D.] 470; [2 Stat. 776]) and 27th January, 1813 (4 Laws U. S. [B. & D.] 490; [2 Stat. 794]).

3. There is no statute of the United States, nor principle of law, which requires an entry to be made, in order to render an importation of merchandise complete.

4. What constitutes an importation.

[Cited in The Gertrude, Case No. 5,370; McAndrew v. Robertson, 29 Fed. 246.]

[Error to the district court of the United States for the district of Pennsylvania.]

This was an action [against Perots and Chamberlain] brought by the United States, in the district court, to recover the additional duties on a cargo, imported into the United States, from the British East Indies, in the year 1812. Upon a special verdict [case unreported], the district court gave judgment against the defendants, who removed the cause, by writ of error, into this court.

C. J. Ingersoll, Dist. Atty., for United States. Chauncey & Rawle, for plaintiffs in error.

WASHINGTON, Circuit Justice. The only question in this cause is, whether the cargo, imported in this vessel, be liable to pay double duties or not; it being found by the verdict, that the single duties have been fully paid. The facts stated in the special verdict are, that the Aurora sailed from the United States in July, 1809, having cleared out for Brazil; but with instructions to the master, to proceed thence to the South Sea, and ultimately to Canton or Manilla. She arrived at Calcutta, in September, 1811; where she was chartered to citizens of the United States, and a cargo was taken in, on account of Chamberlain, the plaintiff in error, and others, all citizens of the United States. Prior to her sailing from Calcutta, a bond was given, with condition to land the cargo in the United States, according to the laws of that place. She arrived at Philadelphia, on the 16th of June, 1812, and an application was immediately made for an entry. On the 26th of June, 1812, the vessel and cargo were seized by the collector as forfeited under the non-importation law. On the 20th of March, 1813, the forfeiture was remitted by the secretary of the treasury.

1 [Reported by Richard Peters, Jr., Esq.]

It is admitted, on the part of the United States, that if the Aurora and her cargo had not been exposed to forfeiture for a breach of the non-importation laws, her cargo would have been subject to the payment of single duties only; in as much as she arrived at her port of destination on the 16th of June; and the law imposing double duties did not pass until the 1st of July, 1812. But it is contended that being obnoxious to the penalty imposed by those laws, and therefore legally denied the privilege of an entry, the double duties attached, as much so as if she had arrived after the 1st of July; and that the subsequent laws, which were passed to exempt vessels and cargoes in the situation of the Aurora and her cargo from forfeiture, if correctly interpreted, require the payment of double duties. In answer to this, it is to be observed, that there is no statute of the United States, nor any general principle of law, which requires an entry to be made, in order to render the importation complete. The arrival of a vessel at her port of destination with intent to land her cargo, constitutes an importation. If the cargo was not liable to the payment of single duties, upon the ground of an importation on the 16th of June, duties could not be demanded under the act of the 1st of July; which imposes an additional duty of one hundred per cent. upon the permanent duties, upon goods which should, from and after the passage of the act, be imported into the United States, from any foreign port. If an entry be necessary to complete the importation, still when the law permits it to be made, it must relate back to the period of the arrival of the vessel at her port of destination; since it is absurd to say that goods so brought in, and even landed in June, 1812, were imported or brought in at any subsequent period, when the entry was made in virtue of the act of the 5th July of the same year. I think, then, there can be no doubt that if the act of the 27th February, 1813 [4 B. & D. Laws U. S. 507; 2 Stat. 804], does not require the payment of double duties, as a condition upon which the forfeiture was excused, they are not demandable, under the act of the 1st of July, 1812. 4 B. & D. Laws U. S. [2 Stat. 768] 459.

The first law which passed in relation to vessels arriving with cargoes from India, in breach of the non-importation law, is that of the 5th of July, 1812 (4 B. & D. Laws U. S. [2 Stat. 776] 470), which goes no further than to authorise their entry, upon the duties being paid, or secured, agreeable to law; and requires the cargoes to be deposited in public stores, under the care of the collector, there to remain, subject to the future disposition of the government, in relation to the vessel and cargo. That a remission of the forfeitures in these cases, was at that time contemplated by the legislature, is very obvious, from the circumstance of the owners of the cargo being required to pay or secure the duties. At the next session of congress, the act of the 27th of

January, 1813 (4 B. & D. Laws U. S. [2 Stat. 794] 490), was passed, upon the correct construction of which the present case must be decided. This law authorises the secretary of the treasury, in all cases where goods, &c., the property of citizens of the United States, have been imported from British ports beyond the Cape of Good Hope, and bonds have been given at such ports, for landing the said cargoes in the United States, if he shall be satisfied, upon the certificate of the district judge, and other proof, that the said goods belong to citizens of the United States, and that such bond was given, to remit all penalties and forfeitures, incurred in consequence of such shipment or importation, and to deliver to the owner the possession of the vessel and cargo. The conditions upon which such remission is thus granted, are expressed in the following terms: "Upon the costs and charges that have arisen or may arise, being paid, and the duties payable on such goods, or which would have been payable, if they had been legally imported, being paid or secured to be paid, according to law; as if the same had been imported and entered, at the time of the release thereof."

It is contended, for the United States, that the above words refer to the period of the release, and not to that of the importation, for the rate at which the duties are to be charged. Now I think it most apparent, that the first part of the above clause, relates to the rate or amount of duties to be paid or secured, and the latter to the time of payment. According to this division of the sentence, the words which constitute the first part, are: "Upon the costs and charges being paid, and the duties payable on such goods, or which would have been payable, if they had been legally imported." Duties payable, most obviously mean, such duties as may by law be demanded; and if such duties are to be paid, as if the goods had been legally imported, let me ask, what duties would have been payable, if those goods had been legally imported? The counsel for the United States has already answered the question, by candidly admitting, that but for the illegality of the importation, the additional duties could not have been demanded. If then, the first part of this clause or paragraph, can be no otherwise construed than in reference to the rate of duties payable by law on the 16th of June, when this vessel arrived, to construe the latter part of it, in reference to the duties imposed by the act of the 1st of July, would be to involve the legislature in the absurdity of contradicting by one part of a sentence what it had expressly declared in another,—a construction, which should be avoided, if it can fairly be done. I think there is no difficulty in making all parts of this sentence harmonise together. The latter words are, "being paid or secured to be paid, according to law, as if the same had been imported and entered, at the time of the release thereof." The former part of the sentence, having declared what duties were to be paid, the question would naturally occur, at what time are these duties to be paid; in as much, as the cargoes may have been imported, at different periods, and have been laying in the public stores, unproductive to the owners? The just, the humane answer, to this question was, and so the law provides, that the duties should be paid, where prompt payment was required by law, or secured, where a credit was allowed; in like manner, as if the importation had been made, at the period when the possession of the goods was restored to the owners. So that if A.'s goods were imported in May, and B.'s goods in June, still, as they were equally deprived of the possession and use of them, until the time of their release; they should be entitled to the same length of credit, if their goods were released at the same time. The latter part of the sentence, does not declare that the duties shall be payable, as if the same had been imported and entered at the time of the release; but that they shall be paid, as if they had been so imported, and entered; clearly referring to the time of payment. This construction, is still further corroborated, by the second section of the act of congress of the 27th February, 1813 (4 B. & D. Laws U. S. [2 Stat. 804] 507), which is in pari materia with the above law, and is intended as a supplement to it. This section declares, that the duties required to be paid or secured by the above act, shall not be so paid or secured, in such manner as to postpone the payment, or, in other words, prolong the credit, beyond the time at which they would be payable, if the importation and entry had taken place, on the 27th February, 1813, when this law passed. Now this section clearly refers to the latter part of the clause or paragraph, of the act of the 27th January, before commented upon; and substitutes, for the most distant period from which the credit for duties was to run, the 27th of February, instead of the time of release as provided by that law; which might have been more distant.

Upon the whole I am of opinion that the plaintiffs are not liable to pay the double duties on these goods, and therefore that the judgment below must be reversed, and entered for the plaintiffs in error.

PEROTT (HALL v.). See Case No. 5.942.

PEROTTO, The VINCENZO. See Case No. 16,947.