FRANKLIN SUGAR REFINING CO. v. UNITED STATES.

(Circuit Court, E. D. Pennsylvania. March 14, 1910.)

No. 42.

1. CUSTOMS DUTIES (§ 53*)—SUGAR BOUNTY.

Under sections 161, 245, Rev. St. (U. S. Comp. St. 1901, pp. 80, 135), providing, respectively, that "in case of * * * absence * * * of the head of any department, the first or sole assistant shall * * * perform the duties of such head," and that "Assistant Secretaries of the Treasury shall * * * perform such * * * duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by law," it is clear that the Secretary of the Treasury could require an Assistant Secretary to "ascertain, determine, and declare" the amount of foreign sugar bounties; that being a duty assigned "the Secretary of the Treasury" by Tariff Act July 24, 1897, c. 11, § 5, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693); and where an Assistant Secretary has issued a declaration under said section it will be presumed, in the absence of evidence to the contrary, that he was performing a duty in accordance with law, and that the declaration was properly issued.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 53.*]

2. CUSTOMS DUTIES (§ 85*)—SUGAR BOUNTY—FINALITY OF ASCERTAINMENT.
Where a published declaration by the Secretary of the Treasury as to the amount of sugar bounty, as authorized by Tariff Act July 24, 1897, c. 11, § 5, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693), was followed by another declaration, but there was nothing to indicate that the latter was issued for the purpose of correcting the former, evidence is not admissible to show that the former was wrong. The importer's only remedy is by appeal to the Secretary himself.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 85.*]

3. CUSTOMS DUTIES (§ 21*)—SUGAR BOUNTY.
The countervailing duty assessed on account of sugar bounty under Tariff Act July 24, 1897, c. 11, § 5, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693), applies according to the rate in force at the time of importation; and the promulgation of a new rate between the time of importation and of liquidation does not affect the amount of countervailing duty applicable.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 21.*]

4. CUSTOMS DUTIES (§ 15*)—SUGAR BOUNTY—"IMPORTATION DATE."
The "importation date" is undoubtedly the date of the arrival of the merchandise in a port of entry of the United States, and not the date of liquidation, or even of entry.

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 15.*
For other definitions, see Words and Phrases, vol. 2, p. 1831.]

On Application for Review of a Decision of the Board of United States General Appraisers.

John G. Johnson, for petitioner.

Jasper Yeates Brinton, Asst. U. S. Atty., and J. Whitaker Thompson, U. S. Atty.

HOLLAND, District Judge. Section 245 of the Revised Statutes (U. S. Comp. St. 1901, p. 135) provides:

"The Assistant Secretaries of the Treasury shall * * * perform such * * * duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary or by law."

By section 161, Rev. St. (U. S. Comp. St. 1901, p. 80):

"The head of each department is authorized to prescribe regulations not inconsistent with the law for the distribution and performance of its business," and "in case of the death, resignation, absence or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the President, as provided by section 179, perform the duties of such head until a successor is appointed, or such absence or sickness shall cease."

Under Act July 24, 1897, c. 11, § 5, 30 Stat. 205 (U. S. Comp. St. 1901, p. 1693), a countervailing duty is authorized upon the importation of articles of merchandise into the United States equal to any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bounty or grant paid upon such articles by the foreign country from which they were imported, and—

"the net amount of all such bounties or grants shall be from time to' time ascertained, determined and declared by the Secretary of the Treasury who shall make all needful regulations for the identification of such articles and merchandise, and for the assessment and collection of such additional duties."

On July 31, 1897, W. B. Howell, "Assistant Secretary," issued Department Circular T. D. 18,217, under the provisions of section 5 of the tariff act of 1897, authorizing the collection of a countervailing duty equal to the amount of bounty paid by Germany on raw sugar, which was fixed by this circular at 2.50 marks per 100 kilos. The importers claim that this countervailing duty was excessive, and should not exceed 2.40 marks, in accordance with a subsequent circular issued June 20, 1899, and signed by the Secretary himself.

The importation and entry of the sugar in question was made during the time the circular of July 31, 1897, signed by the Assistant Secretary, was in force, but liquidated after the circular of June 20, 1899, signed by the Secretary himself, had been issued; and the contention of the importer now is that the liquidation should have been made under the Department Circular of June 20, 1899, at the rate of 2.40 marks per 100 kilos, instead of under the circular of July 31, 1897, at the rate of 2.50 marks per 100 kilos—first, because at the time of the importation of the sugars in question in this case there had been no ascertainment, determination, or declaration by the Secretary of the Treasury of the existence of any export bounty by the empire of Germany; and, second, the German law having remained unchanged and the Secretary of the Treasury having made two determinations as to its meaning, prior to the liquidation of the duties on these entries, the determination which was in force at the date of the liquidation should be applied.

As to the first, which amounts to a contention that the circular of July 31, 1897, was improperly issued and not binding upon the importer, it will be noted that under the provisions of section 245, Rev. St., the Secretary of the Treasury is authorized to prescribe the duties to be performed by the Assistant Secretaries, and under section 161, Rev. St., the First Assistant is required "in case of the death, resignation or absence of the head of any department to perform his duties," etc.

It is clear from these provisions of the Revised Statutes that the Secretary of the Treasury could require the Assistant Secretary "to ascertain, determine, and declare" the net amount of the bounties which Germany paid on sugars at the time, and to fix the amount to be collected on importations from that country. The circular of July 31, 1897, was issued by the Assistant Secretary of the Treasury, and the presumption is that he was authorized to issue the circular and fix the bounties to be collected for sugar imported from Germany. In the absence of any evidence to the contrary, it is presumed that the Assistant Secretary was performing a duty in accordance with the provisions of the law above referred to, and the circular must be presumed to have been properly issued and binding upon all importers for importations made during the time it remained in force. Shillito Co. v. McClung,

51 Fed. 868, 2 C. C. A. 526; 3 Fed. St. Ann. p. 58, note, and p. 61, note.

The gist of the second objection, in the light of the argument, is that, even if the circular of July 24, 1897, was properly issued, it shows upon its face that the department was not in possession of sufficient information to declare what amount of countervailing duty should be collected, as the Assistant Secretary stated—

"that this department had not yet received the necessary data for the declaration contemplated by section 5 of the tariff act of July 24, 1897, in regard to duties paid by various foreign countries."

But it will be noted that in the same circular he says:

"From information collected under former tariffs, * * * it appears that Germany * * * paid the following bounties."

The circular was issued seven days after the act of July 24, 1897, went into effect, and it is evident that the amount of countervailing duties required to be paid, as fixed in that circular, was based upon information, as the Assistant Secretary states, "collected under former tariffs"; but there is nothing to indicate that this information so collected was not sufficient to enable him to fix the correct amount and to perform his duty as required by the fifth section of the act of 1897, and as there is nothing in the circular of June 20, 1899, to indicate that it was issued for the purpose of correcting any mistake in the circular of July 31, 1897, we do not think evidence can be admitted to show that the Assistant Secretary was wrong in fixing the amount of bounty to be collected at 2.50 marks per 100 kilos. It is the province of the Secretary of the Treasury, under the act, "from time to time to ascertain, determine and declare" the amount of the bounties granted; and when this is done by the Secretary his finding and declaration of the same are binding upon the collector, the Board of General Appraisers, and the courts, and no evidence will be admitted upon a hearing before any of these tribunals to contradict the determination of the Secretary. If the importer feels that an injustice has been done, his remedy is by appeal to the Secretary of the Treasury.

It was undoubtedly the intention of Congress, in the enactment of this section, that the findings of the Secretary as to the amount of bounties paid by the foreign countries and collectible upon importation of merchandise as a countervailing duty should be final so far as any revision or examination by the courts is concerned. We see no difference between this provision of the act of 1897 and that section in the various tariff acts which requires the Secretary of the Treasury to proclaim the values of foreign coins after they have been ascertained by the estimate of the Director of the Mint, in so far as the finding of fact is to be regarded as binding upon the courts under this provision.

As to the values of foreign coins, the Supreme Court in four cases, to wit, Arthur v. Richards, 90 U. S. 259, 23 L. Ed. 95, Cramer v. Arthur, 102 U. S. 612, 26 L. Ed. 259, Hadden v. Merritt, 115 U. S. 25, 5 Sup. Ct. 1169, 29 L. Ed. 333, and U. S. v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647, declared that the finding or estimate of the Director of the Mint, as proclaimed by the Secretary of the Treasury, was binding, not only upon the collector and the Board of

General Appraisers, but upon the courts as well; and we have no doubt it was the intention of Congress that in the matter of the collection of the countervailing duties the amount fixed by the Secretary of the Treasury to be collected on importations cannot be inquired into by the courts, but must be settled as declared by the Treasury Department. If there has been a mistake, the remedy is by appeal to the Secretary. In case that has not been done, the courts cannot admit evidence for the purpose of inquiring into the question as to whether the amount fixed by the Secretary was or was not correct.

The importation in question having arrived at this port during the time that the circular of July 31, 1897, was in force, the amount of countervailing duty collectible upon the same, we think, was properly liquidated at the amount fixed in that circular per 100 kilos. The fact that a subsequent circular was issued by the department prior to the liquidation can have no effect, because under this section 5 of the act of July 24, 1897, the language is that the additional duty shall be levied and paid "upon the importation of any such article," so that this special duty on importations is to be ascertained and assessed in accordance with the provisions of the laws and regulations in effect at the time of importation; and that the date of importation is undoubtedly the date of the arrival of the merchandise in a port of entry in the United States, and not the date of liquidation, or even of the entry, is well settled by the following cases: U. S. v. Vowell, 9 U. S. 368, 3 L. Ed. 128; Arnold et al. v. U. S., 13 U. S. 104, 3 L. Ed. 671; U. S. v. Lyman, 26 Fed. Cas. 1024; Perots v. U. S., 19 Fed. Cas. 258.

The decision of the Board of General Appraisers is affirmed.