**FERGUSON, Collector of Customs, v. PORT HURON & SARNIA FERRY CO.**

(District Court, E. D. Michigan, S. D. June 4, 1926.)

No. 7365.

**1. Customs duties ⬿54—Ferryboats held subject to requirement for extra compensation for overtime service performed by customs officials (Rev. St. § 2792, as amended by Act May 28, 1908 [Comp. St. § 5489]; Act Feb. 13, 1911, as amended by Act of Feb. 7, 1920 [Comp. St. Ann. Supp. 1923, § 5571]).**

Under Rev. St. § 2792, as amended by Act May 28, 1908 (Comp. St. § 5489) ferryboats are subject to requirements of Act Feb. 13, 1911, as amended by Act Feb. 7, 1920, (Comp. St. Ann. Supp. 1923, § 5571), providing for extra compensation for customs officials for overtime services to be paid by representatives of vessel.

**2. Customs duties ⬿54—Overtime pay allowed customs officials is payable for work after hours, whether or not officer worked regular hours on such day (Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 [Comp. St. Ann. Supp. 1923, § 5571]).**

Overtime pay to customs officials, under Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 (Comp. St. Ann. Supp. 1923, § 5571), is payable for work after regular working hours, whether or not officer worked regular hours on such day; "overtime" being used as meaning "beyond the regular fixed hours."

[Ed. Note.—For other definitions, see Words and Phrases, Overtime.]

**3. Customs duties ⬿54—Treasury decisions, containing regulations for payment of extra compensation for overtime services of customs officials, held sufficient compliance with law providing that Secretary of the Treasury should fix compensation (Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 [Comp. St. Ann. Supp. 1923, § 5571]).**

"Treasury decisions" containing regulations governing payment of extra compensation for overtime service of customs officials held to constitute sufficient compliance with Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 (Comp. St. Ann. Supp. 1923, § 5571), providing that Secretary of the Treasury should fix reasonable rate of extra compensation for such services.

**4. Customs duties ⬿54—Treasury decisions, containing regulations for overtime service of customs officials, held compliance with law, although signed by Assistant Secretary (Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 [Comp. St. Ann. Supp. 1923, § 5571]).**

Treasury decisions, containing regulations for overtime services of customs officials, under Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 (Comp. St. Ann. Supp. 1923, § 5571), held sufficient compliance with statute, although signed by Assistant Secretary in absence of showing that Assistant Secretary was not authorized to do so.

**5. Evidence ⬿83(1)—Act of Assistant Secretary of the Treasury will, in absence of evidence to contrary, be presumed to have been authorized by Secretary.**

Act of Assistant Secretary of the Treasury will be presumed, in absence of evidence to contrary, to have been duly authorized by Secretary, acting within his authority, to be lawful and valid.

**6. Customs duties ⬿54—Overtime pay for customs officials for services between 5 p. m. and 8 a. m. held to apply to services between those hours on Sundays and holidays, although statute provided additional overtime pay for such days (Act Feb. 13, 1911, § 5 as amended by Act Feb. 7, 1920 [Comp. St. Ann. Supp. 1923, § 5571]).**

Overtime pay for customs officials, provided by Act Feb. 13, 1911, § 5, as amended by Act Feb. 7, 1920 (Comp. St. Ann. Supp. 1923, § 5571), for services between 5 p. m. and 8 a. m. held to apply to services between 12:01 a. m. and 8 a. m. and between 5 p. m. and midnight, on Sundays and holidays, although statute provides additional overtime pay for Sundays and holidays.

At Law. Action by Carey D. Ferguson, Collector of Customs, against the Port Huron & Sarnia Ferry Company, a Michigan corporation. Judgment for plaintiff.

Delos G. Smith, U. S. Atty., of Detroit, Mich., for plaintiff.

Miller, Canfield, Paddock & Stone, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This is an action at law, brought by the collector of customs for this district, suing for the United States and for himself as collector, for the use and benefit and in behalf of certain deputy collectors of customs, against the defendant corporation, the Port Huron & Sarnia Ferry Company, which operates a line of ferryboats daily, carrying merchandise and passengers with their baggage, from Sarnia, Canada, to Port Huron, Mich., in this district. The action is brought to recover certain extra compensation alleged by plaintiff to be due from defendant for overtime services of said deputy collectors of customs, performed by them in connection with the unlading and inspection of such merchandise, passengers, and baggage during the years 1920 to 1924, inclusive, pursuant to statutory provisions hereinafter quoted and referred to. The cause, being at issue on declaration and plea of the general issue, was heard by the court without a jury, in accordance with written stipulation to that effect filed by the parties, pursuant to section 649 of the Revised Statutes (Comp. St. § 1587).

The questions presented have been grouped and argued by counsel as follows: (1) Was the statute providing for the extra compensation sought applicable to ferries during the period in controversy? (2) What was the legal basis of pay on which such extra compensation should be computed? (3) What is the proper method of computing such extra compensation?

1. The statute providing for the extra compensation here sought to be recovered is section 5 of the Act of Congress of February 13, 1911 (chapter 46, 36 Stat. 901, as amended by the Act of February 7, 1920, chapter 61, 41 Stat. 402 [Comp. St. Ann. Supp. 1923, § 5571]), hereinafter quoted in full. It is contended by defendant that this act, as so amended, does not apply to ferryboats, or, at least, that it did not so apply during the part of the period here in question prior to the time of the enactment of the Tariff Act of 1922 (42 Stat. 858); this court having already held that by the terms of said Tariff

Act such ferryboats were clearly made subject to the provisions of the 1911 statute, as amended, just cited. Port Huron & Sarnia Ferry Co. v. Lawson (D. C.) 292 F. 216. The question whether such statute applied to such ferryboats before 1922 was not involved nor decided in that case, but is now raised by defendant, which, in support of its contention, points to, and relies on, section 2792 of the United States Revised Statutes, as amended by the Act of May 28, 1908, chapter 212, § 1, 35 Statutes at Large, 424 (Comp. St. § 5489). That section provides, in part, as follows:

"Vessels used exclusively as ferryboats carrying passengers, baggage, and merchandise, shall not be required to enter and clear, nor shall the masters of such vessels be required to present manifests, or to pay entrance or clearance fees, or fees for receiving or certifying manifests, but they shall, upon arrival in the United States, be required to report such baggage and merchandise to the proper officer of the customs according to law."

Section 1 of the Act of February 13, 1911 (Comp. St. § 5559), under consideration, provides as follows:

"Upon arrival at any port in the United States of any vessel or other conveyance from a foreign port or place * * * and after * * * due report * * * the collector of customs * * * shall grant, upon proper application therefor, a special license to lade or unlade the cargo of any such vessel or other conveyance at night; that is to say, between sunset and sunrise."

Section 4 of this act (section 5562) includes the following provision:

"Special license or licenses to lade or unlade at night after regular entry of vessels, and due report of other conveyances, may be granted, and a permit or permits may be issued for the immediate lading and unlading, by day and night, of vessels admitted to preliminary entry, or of other conveyances of which due report of arrival has been made."

Section 2872 of the Revised Statutes, as amended by the Act of June 26, 1884, chapter 121, section 25, 23 Statutes at Large, 59 (Comp. St. § 5563), provides that:

"No merchandise brought in any vessel from any foreign port shall be unladen or delivered from such vessel within the United States but in open day—that is to say, between the rising and the setting of the sun—except by special license from the collector of the port."

Section 5 of the 1911 statute, as amended by the 1920 statute, already cited, provides in full as follows:

"The Secretary of the Treasury shall fix a reasonable rate of extra compensation for overtime services of inspectors, storekeepers, weighers, and other customs officers and employees who may be required to remain on duty between the hours of five o'clock post meridian and eight o'clock ante meridian, or on Sundays or holidays, to perform services in connection with the lading or unlading of cargo, or the lading of cargo or merchandise for transportation in bond or for exportation in bond or for exportation with benefit of drawback, or in connection with the receiving or delivery of cargo on or from the wharf, or in connection with the unlading, receiving, or examination of passengers' baggage, such rates to be fixed on the basis of one-half day's additional pay for each two hours or fraction thereof of at least one hour that the overtime extends beyond five o'clock post meridian (but not to exceed two and one-half days' pay for the full period from five o'clock post meridian to eight o'clock ante meridian), and two additional days' pay for Sunday or holiday duty. The said extra compensation shall be paid by the master, owner, agent, or consignee of such vessel or other conveyance whenever such special license or permit for immediate lading or unlading or for lading or unlading at night or on Sundays or holidays shall be granted to the collector of customs, who shall pay the same to the several customs officers and employees entitled thereto according to the rates fixed therefor by the Secretary of the Treasury: Provided, that such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual lading, unlading, receiving, delivery, or examination takes place or not. Customs officers acting as boarding officers and any customs officer who may be designated for that purpose by the collector of customs are hereby authorized to administer the oath or affirmation herein provided for, and such boarding officers shall be allowed extra compensation for services in boarding vessels at night or on Sundays or holidays at the rates prescribed by the Secretary of the Treasury as herein provided, the said extra compensation to be paid by the master, owner, agent, or consignee of such vessel: Provided further, that in those ports where customary working hours are other than those hereinabove mentioned, the collector of customs is vested with authority to regulate the hours of customs employees so as to agree with prevailing working hours in said ports, but nothing contained in this proviso shall be construed in any manner to affect or alter the length of a working day for customs employees or the overtime pay herein fixed."

[1] It will be noted that section 5, last quoted, refers, and expressly applies, to "such vessel or other conveyance." This reference is, obviously, to the "vessel" for which an "entry" is prescribed by the other sections of the Statute already quoted, and to the "other conveyance" for which a "report" is prescribed by such sections. The very statute, therefore, thus relied on by defendant in this connection, section 2792 of the Revised Statutes hereinbefore cited, as exempting ferries from "entry," and hence from liability for this "extra compensation," requires such ferries to "report" their baggage and merchandise "to the proper officers of the customs according to law." It is clear that ferry boats are subject to the statutory requirements concerning the "overtime" services here involved, regardless of the provisions of the Tariff Act of 1922, and the contention of the defendant to the contrary, must be overruled.

2. As the amount of the "overtime pay" provided by section 5 of the statute in question is dependent on the amount of the regular pay of the customs officers involved, it is necessary to determine the amount of such regular pay. It is argued by the defendant that the amounts received by said customs officers as their regular compensation, on which they claim said overtime pay, is in excess of that authorized by law, as to a part of the period in controversy, for the reason that the rates of such regular pay are governed by the Customs Reorganization Act of 1912 (Act of August 24, 1912, chapter 355, section 1, 37 Statutes at Large, 434), and that the regular compensation of customs inspectors as fixed by said act of 1912 is lower than that received by the officers concerned in the present case. It is, however, unnecessary to decide whether that statute, or the statute relied on by plaintiff, the Act of March 4, 1909, chapter 314, 35 Statutes at Large, 1065, providing for other and higher rates of compensation, is applicable, because the record shows that the officers in question here are not "inspectors," but "deputy collectors," and an examination of the act of 1912 thus relied on by de-

fendant discloses ample authority for the payment of regular compensation to such officers at the rates claimed by plaintiff to be in accord with law. The contention of defendant in this regard is without merit.

3. There is dispute between the parties as to the proper method of computing the extra compensation prescribed by section 5, already quoted.

[2] (a) It is claimed by defendant, and denied by plaintiff, that "overtime pay" is not earned, on any particular day, within the meaning of this statute, unless the officer seeking such overtime pay has first earned his regular pay for such day by working during the regular hours on that day; that is, in the words of defendant in its brief, "to be entitled to 'overtime' the inspector must first have given his contract, or normal, time of eight hours—otherwise, there could be no 'overtime.'" I cannot agree with this contention. Congress could easily have used language in the statute which would have expressed such an intention, but it has not done so. The term "overtime" appropriately expresses the meaning, and in my opinion was intended to express such meaning: "Beyond the regular, fixed working hours." The word "remain," in the clause referring to officers required to "remain on duty between the hours" mentioned, means, according to its proper interpretation, "remain on duty after reporting for such duty." The section itself provides that "such extra compensation shall be paid if such officers or employees have been ordered to report for duty and have so reported, whether the actual" work contemplated "takes place or not." As was pointed out by the Supreme Court in its opinion in International Railway Co. v. Davidson, 257 U. S. 506, 42 S. Ct. 179, 66 L. Ed. 341: "This * * * section defines what shall be deemed overtime." The only definition thus employed was the reference to the period of time between the particular hours specified, without regard to the question whether the services rendered "at night" or "on Sundays or holidays" immediately and continuously followed services just completed for regular pay. Clearly, the object of the statute was to facilitate lading and unlading "at night" and on Sundays and holidays, irrespective of whether the officers working in connection therewith had previously worked during the regular hours of the immediately preceding regular working "day."

(b) It is contended by defendant that the statute does not itself fix the rates of extra compensation provided, but requires the Secretary of the Treasury to fix such rates, which has not yet been done with the requisite, legal formality, and that, therefore, there is no legal basis for the overtime sought. The record shows that pursuant to the statute, Treasury Decisions 38290, dated February 21, 1920, and 38429, dated June 4, 1920, both signed by an Assistant Secretary of the Treasury, were issued. T. D. 38290 is entitled: "Regulations Governing the Payment of Extra Compensation for Overtime Services under the Act of February 13, 1911." After quoting the statute in full, the "decision" of the Treasury Department proceeds as follows:

"In view of the above change in the law the regulations of the department governing the payment of extra compensation are amended to read as follows:

"The term 'at night' as used in the Act of February 13, 1911, as amended, shall include the hours from 5 p. m. of any day to 8 a. m. of the following day.

"Attention is invited to the second proviso to the act quoted above, which authorizes collectors of customs at ports where the prevailing working hours are not from 8 a. m. to 5 p. m. to regulate the hours of customs employees to agree with prevailing working hours.

"The term 'holidays,' as used in the said act, shall include only national holidays, viz. January 1, February 22, May 30, July 4, the first Monday in September, Thanksgiving Day (when designated by the President), and December 25. * * *

"Customs officers and employees performing services at night or on Sundays and holidays shall receive compensation as follows:

"For services performed after 5 p. m. of any day, including Sundays and holidays, one-half day's pay for each two hours or fraction thereof that the overtime extends beyond 5 p. m.: Provided that the overtime is not less than one hour, but the maximum amount which may be paid an employee for services between 5 p. m. and 8 a. m. shall not exceed two and one-half days' pay.

"For services performed on Sundays and holidays the maximum compensation shall be two days' pay, the computation of which shall be as follows:

"Employees receiving a per diem rate of compensation shall be paid two days' pay for each day's work or part thereof performed by them during the regular working hours

in addition to the regular compensation paid them by the Government. Officers and employees receiving a rate of compensation per month will be paid twice one-thirtieth of their regular monthly salary for work performed during regular working hours on Sundays or holidays under the above act, and officers and employees receiving a compensation per annum will be paid twice one three-hundred and sixtieth of their regular annual salary for such extra work on Sundays and holidays. * * *

"The extra compensation provided for in the above act is in addition to the regular compensation paid by the government in the case of officers and employees whose compensation is fixed on the ordinary per diem basis and those receiving a compensation per month or per annum. Officers and employees who are paid on a per diem basis 'when employed' will receive no other compensation for services rendered by them on Sundays and holidays than that allowed under the above act."

T. D. 38529 contains the following provisions:

"The phrase 'for each two hours or fraction thereof that the overtime extends beyond 5 o'clock' should be construed as authorizing the payment of extra compensation from 5 p. m. for services consisting of at least one hour, even though such services may not actually begin until 7 p. m., 9 p. m., or later. Where, however, service is rendered between 5 a. m. and 8 a. m. only, it would be inequitable to charge the parties in interest the maximum amount of overtime authorized by the act; that is, two and one-half days' extra pay. The charge for such period, or one hour thereof, should therefore be only one-half day's extra pay. * * *

"After the maximum amount of two and one-half days' extra compensation has been earned no additional compensation can be charged up to 8 a. m. for the services of the same employee or of another employee who continues work in place of the man first assigned. The maximum charge against parties in interest for services which could be performed by one man from 5 p. m. to 8 a. m. should be two and one-half days only."

[3] Although these documents are referred to by the government as "Treasury Decisions," it cannot be doubted that they are the official, solemn, regular acts of the Treasury Department, and constitute a sufficient compliance with the terms of section 5 of the statute, providing that the Secretary of the Treasury should "fix a reasonable rate of extra compensation" for the overtime services in question, "on the basis" prescribed by said statute.

[4, 5] (c) The objection that the regulations just referred to do not comply with the statute, because they are signed by an Assistant Secretary, and not by the "Secretary," of the Treasury is without merit, as it does not appear from the record, nor is it claimed, that such Assistant Secretary was not authorized by the Secretary to issue such regulations, and it is well settled that the act of an Assistant Secretary of the Treasury will be presumed, in the absence of evidence to the contrary, to have been duly authorized by the Secretary, acting within his authority, and to be lawful and valid. Norris v. United States, 257 U. S. 77, 42 S. Ct. 9, 66 L. Ed. 136; John Shillito Co. v. McClung, 51 F 868, 2 C. C. A. 526 (C. C. A. 6); Franklin Sugar Refining Co. v. United States (C. C.) 178 F. 743.

[6] (d) It is further urged by the defendant that these regulations are invalid, because not "reasonable." The gist of the argument seems to be that officers who are required to work between 12:01 a. m. and 8 a. m. on Sundays or a holiday, and between 5 p. m. and midnight on Sunday or a holiday, are not entitled to "extra" compensation for those hours as extra hours, for the reason that the statute, in providing for overtime pay "on Sundays or holidays," should be construed as ignoring the number of hours devoted to work on those days, and as excluding from those days the extra compensation provided, in general terms, for the period between 5 o'clock p. m. and 8 o'clock a. m. I cannot agree with, nor accept, this argument. Its effect would be that, although "the length of a working day for customs employees," referred to in the statute, would be eight hours for every secular workday (when customs employees expect to work), it would be twenty-four hours for every Sunday or holiday (when such employees do not and should not naturally nor ordinarily perform those services). Such a result is unreasonable and cannot have been intended by Congress. The statute declares that "duty between the hours of five o'clock post meridian and eight o'clock ante meridian" (without any limitation as to the days on which such hours occur) shall constitute overtime services. If no reference had been made to any Sunday or holiday duties, it could not be seriously claimed that the hours

just mentioned did not apply to Sundays and holidays as well as to other days. There is no more reason, in my opinion, to suppose that, merely because Sunday and holiday duty was allowed and called overtime (as in fact and truth it is), the number of regular working hours on those days should be increased beyond the number comprising a "working day" on week days. I conclude that the statute recognizes that a working day for customs employees consists of eight hours, between 8 o'clock a. m. and 5 o'clock p. m., and that when such employees are required to perform services between 5 p. m. of any day (whether weekday, Sunday, or holiday) and 8 a. m. on the next day (whether it be a weekday, Sunday, or holiday), such services constitute overtime within the meaning of the statute; that ordinarily (and in the absence of an employment contract expressly providing otherwise) such employees are not expected to work on Sundays or holidays, and that when they are required to work on such days, during regular working hours as already explained, they are entitled to extra compensation therefor; and that when such employees are required to perform services, not only on a Sunday or holiday, but also beyond such regular working hours on said Sunday or holiday, they are entitled to the extra compensation provided for those extra days, and also to the extra compensation provided for those extra hours. The contention of defendant that the rates of compensation claimed by plaintiff are unreasonable and illegal cannot be sustained.

(e) It appears to be agreed between the parties that, in computing the amount of the regular daily compensation of customs employees working under a yearly contract, Sundays or holidays should not be deducted, and it is therefore unnecessary to discuss that question.

I find as matters of fact that the schedule attached to the declaration herein correctly states the names, official positions, hours, and dates of overtime services, and regular compensation on such dates, of the customs employees for whom extra compensation is sought herein. All requests for other findings of fact submitted are refused. A verdict and judgment thereon in the full amount claimed by plaintiff may be entered forthwith. As the recovery of interest was expressly disclaimed on behalf of plaintiff at the hearing in open court, said verdict and judgment will bear no interest.