(C. D. 220)

V. MUELLER & Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 6, 1939)

*G. W. R. Wallace; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.

*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States arising at the port of Chicago, Ill., seeking to recover a sum of money paid

as customs duties upon importations of surgical instruments from Germany. Entry was made during the month of September 1936. Examination of the official papers discloses that estimated regular duty was assessed at the rate of 55 per centum ad valorem on the merchandise under the provisions of paragraph 359 of the Tariff Act of 1930, and paid on September 30, 1936. In addition there was assessed an estimated countervailing duty under the provisions of section 303 of the same law under authority of T. D. 48360, wherein the Secretary of the Treasury instructed collectors of customs to require a deposit of estimated countervailing duties on certain merchandise imported from Germany, including surgical instruments.

Plaintiffs herein claim that the merchandise is not subject to countervailing duty, and in an amendment to their pleadings it is claimed that:

The assessment of countervailing duty herein is illegal and void on the ground that the Secretary of the Treasury has not ascertained, and determined, or estimated, and declared and published, the net amount of the bounty or grant, as required by Section 303, Tariff Act of 1930, and Article 842 (b), Customs Regulations of 1931, and other pertinent statutes and regulations.

No claim is made that the regular duty assessed under paragraph 359 was erroneously collected.

The statutes and regulations involved are here set out.

SEC. 303. COUNTERVAILING DUTIES.

Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

ART. 842 (b). The net amount of such bounties or grants will be published from time to time by the bureau, with instructions for the collection of the countervailing duties.

(T. D. 48360)

*Countervailing duty on certain German products* ·

Collectors of customs instructed to suspend liquidation of entries covering certain merchandise from Germany pending declaration of amount of countervailing duty to be collected—Deposit of estimated countervailing duties required

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C.*

*To Collectors of Customs and Others Concerned:*

Official reports and other data in the files of the Department establish to its satisfaction that bounties and/or grants are paid and/or bestowed, directly or indirectly, on the export to the United States of articles of the kinds named below, which are dutiable under the provisions of the Tariff Act of 1930.

Notice is hereby given that, pursuant to the provisions of section 303 of the Tariff Act of 1930, countervailing duties equal to any bounty and/or grant found to have been paid and/or bestowed will be collected on articles of the kinds named below when imported directly or indirectly from Germany after thirty days following publication of this notice in a weekly issue of the TREASURY DECISIONS.

The liquidation of all entries covering merchandise of the kinds named below imported directly or indirectly from Germany after thirty days following publication of this notice in the weekly TREASURY DECISIONS, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected. A deposit of estimated countervailing duties shall be required at the time of entry in an amount equal to the percentage of invoice value stated below in connection with the name of the article.

The articles subject to this notice are as follows:

| Article | Percentage of invoice value | Article | Percentage of invoice value |
|---|---|---|---|
| Cameras | 45 | Calf and kid leather | 25 |
| China tableware | 22½ | Glass tree ornaments | 52 |
| Cotton and rayon gloves | ·39 | Metal-covered paper | 48 |
| Leather gloves | 47 | Thumb tacks | 31 |
| Surgical instruments | 56 | Toys, dolls, and toy figures | 45 |

The facts in regard to each importation within the purview of this notice shall be reported promptly and in full to the Bureau of Customs.

JAMES H. MOYLE,
*Commissioner of Customs.*

Approved June 4, 1936:
H. MORGENTHAU, Jr.,
*Secretary of the Treasury.*

[Filed with the Division of the Federal Register June 6, 1936, 10:56 a. m.]

This Treasury decision was approved June 4, 1936, prior to the date of the instant entry and prior to the time the instant merchandise was ordered, according to the date of the order as noted in red ink on the invoices in question.

It will be seen by a reading thereof that it contemplated the declaration at some future time of the net amount of the bounty or grant paid or bestowed by Germany and the net amount of the countervailing duty to be collected. It is admitted by the Government that no such declaration was ever published in the TREASURY DECISIONS.

The only witness produced in the case was Mr. John C. Cox, the deputy collector in charge of the liquidating division in the custom-house at the port of Chicago, who was called by the plaintiffs. He testified that the amount of $184.80 was collected under authority of T. D. 48360, *supra*, in the nature of a supplemental deposit, that sum being 56 per centum of the invoice values of the items returned by the Government examiner as falling within the provisions of said T. D. 48360; that it was collected under the authority of that Treasury decision, and that subsequently, but prior to liquidation of the entry, he received a letter from the Treasury Department upon the basis of which he assessed the sum of $108.11 as countervailing duty upon the merchandise in suit. He further testified that so far as he knew this letter was not published or placed on the bulletin board, or circulated among importers. This witness also testified that he was unable to state whether the countervailing duty here assessed was based upon the question of German currency or the use of registered marks in the purchase of the goods in question.

A photostat copy of the letter referred to was admitted in evidence as Exhibit 1 and insofar as pertinent, is as follows:

Treasury Department.

The Collector of Customs,
    Chicago, Ill.

Sir:

Receipt is acknowledged of your letter of October 6, 1937 (208–2), in connection with the applicability of the provisions of section 303 of the Tariff Act of 1930 (U. S. C., title 19, sec. 1303) and (1936) T. D. 48360 to certain importations of German merchandise described as follows:

\*      \*      \*      \*      \*      \*      \*

Entry No. 2933 V. Mueller & Co.   Surgical instruments.

\*      \*      \*      \*      \*      \*      \*

It has been estimated and it is hereby declared that the net amounts of bounties or grants paid or bestowed with respect to the importations under the first six entries mentioned in the first paragraph of this letter are as follows:

\*      \*      \*      \*      \*      \*      \*

Entry No. 2933                                 $108.11

You are, accordingly, authorized and directed to assess these amounts as countervailing duties in the liquidation of the entries in question.

\*      \*      \*      \*      \*      \*      \*

Very truly yours,
    J. H. Moyle,
    *Commissioner of Customs.*

Approved: Nov. 12, 1937.
    Stephen B. Gibbons,
        *Acting Secretary of the Treasury.*

Plaintiffs' attorney sets out his contentions in his brief as follows:

*First,* that *at the time of importation* of the merchandise in this case, the Secretary of the Treasury had not ascertained and determined, or estimated and published, the *net amount* of any bounty or grant on this merchandise.

*Second*, that Exhibit 1 is not a valid basis for the assessment of countervailing duties, because (a) it was not published, promulgated, or proclaimed; and (b) it was not issued until long after the importation of the merchandise in this case. [Italics quoted.]

On the first point plaintiffs contend that the statute and regulations do not authorize the determination and declaration of a *percentage* but of a net amount. It is our opinion that the Secretary of the Treasury acted within the authority of section 303, *supra*, in directing the percentage of additional deposit. The language of the statute directing his action provides that he "shall from time to time ascertain and *determine*, or *estimate*, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated." [Italics supplied.] When a foreign country has declared a bounty or a fixed amount, by a statute, the Secretary can readily "ascertain and determine" the amount thereof and can so declare as, for instance, the rate of duty imposed by Belgium on motorcars or the rate of duty imposed by Germany on cardboard, etc. (T. D. 41934), but where the bounty or grant is made through or by means of a manipulated currency, for instance, then the Secretary must resort to the other direction in the statute, viz, "he shall from time to time * * * estimate the net amount of each such bounty or grant, and shall declare the net amount so * * * estimated."

Webster's New International Dictionary, Second Edition, defines "estimate" as follows:

2. a To fix the worth, value, size, extent, etc., of esp. roughly or in a general way.

T. D. 48360 fixes the amount roughly or in a general way at 56 per centum. Thus the importer is advised first, that Germany has granted a favor or bounty on the merchandise involved (a fact not disputed herein). Second, he is advised of the definite amount he must deposit with his other estimated amount of duties collected on entry. He is also notified that like his other estimated amount of duty to be deposited, this percentage amount will be liquidated at a subsequent date to the end that only the "net amount" of Germany's grant will be required to be paid by him into the Treasury of the United States.

T. D. 48360, *supra*, is most considerate in its provisions for the protection of the taxpayer. Inasmuch as the Secretary's determination of the amount of bounty is conclusive and cannot, under the decisions, be questioned in a court of law, he might have eliminated any provision for a subsequent liquidation of the net amount. He could have rested on the information which prompted the declaration of the 56 per centum, and the importer would have been powerless to question the amount. On the question of the finality of the Secretary's determination of the amount of countervailing duty see T. D.

24355, G. A. 5322; *Downs* case, T. D. 22984, G. A. 4912, affirmed in *Downs* v. *United States*, 113 Fed. 144, which was affirmed in *Downs* v. *United States*, 187 U. S. 515, 47 L. ed. 282.

An interesting case on the question of the amount of countervailing duty to be collected is that of *Franklin Sugar Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 242, T. D. 31276, because of the fact that two different rates of countervailing duty had been declared on different dates. The case originally was reported in an abstract opinion (Abstract 11009, T. D. 27309) by Somerville, G. A. (Waite and Hay, General Appraisers, concurring). It was appealed to the Circuit Court, Eastern District of Pennsylvania, where Holland, District Judge, wrote the opinion affirming the decision of the Board of United States General Appraisers. (See *Franklin Sugar Refining Co.* v. *United States*, 178 Fed. 743.) We quote from Judge Holland's opinion as to the facts of the two rates, as follows:

On July 31, 1897, W. B. Howell, "Assistant Secretary," issued Department Circular T. D. 18217, under the provisions of section 5 of the Tariff Act of 1897, authorizing the collection of a countervailing duty equal to the amount of bounty paid by Germany on raw sugar, which was fixed by this circular at 2.50 marks per 100 kilos. The importers claim that this countervailing duty was excessive, and should not exceed 2.40 marks, in accordance with a subsequent circular issued June 20, 1899, and signed by the Secretary himself.

The importation and entry of the sugar in question was made during the time the circular of July 31, 1897, signed by the Assistant Secretary, was in force, but liquidated after the circular of June 20, 1899, signed by the Secretary himself, had been issued; * * *.

Two objections were made by the importer to this action of the Secretary. We refer to the second objection stated as follows on p. 746:

The gist of the second objection, in the light of the argument, is that, even if the circular of July 24 [July 31], 1897, was properly issued, it shows upon its face that the department was not in possession of sufficient information to declare what amount of countervailing duty should be collected, as the Assistant Secretary stated—

"that this department had not yet received the necessary data for the declaration contemplated by section 5 of the Tariff Act of July 24, 1897, in regard to duties paid by various foreign countries."

*    *    *    *    *    *    *

The circular was issued seven days after the act of July 24, 1897, went into effect, and it is evident that the amount of countervailing duties required to be paid, as fixed in that circular, was based upon information, as the Assistant Secretary states, "collected under former tariffs"; but there is nothing to indicate that this information so collected was not sufficient to enable him to fix the correct amount and to perform his duty as required by the fifth section of the Act of 1897, and as there is nothing in the circular of June 20, 1899, to indicate that it was issued for the purpose of correcting any mistake in the circular of July 31, 1897, we do not think evidence can be admitted to show that the Assistant Secretary was wrong in fixing the amount of bounty to be collected at 2.50 marks per 100 kilos. It is the province of the Secretary of the Treasury, under the act, "from time to time to ascertain, determine, and declare" the amount of

the bounties granted; and when this is done by the Secretary his finding and declaration of the same are binding upon the collector, the Board of General Appraisers, and the courts, and no evidence will be admitted upon a hearing before any of these tribunals to contradict the determination of the Secretary. If the importer feels that an injustice has been done, his remedy is by appeal to the Secretary of the Treasury.

It was undoubtedly the intention of Congress, in the enactment of this section, that the findings of the Secretary as to the amount of bounties paid by the foreign countries and collectible upon importation of merchandise as a countervailing duty should be final so far as any revision or examination by the courts is concerned.

The opinion concludes with this declaration of the law:

The importation in question having arrived at this port during the time that the circular of July 31, 1897, was in force, the amount of countervailing duty collectible upon the same, we think, was properly liquidated at the amount fixed in that circular per 100 kilos. The fact that a subsequent circular was issued by the department prior to the liquidation can have no effect, because under this section 5 of the Act of July 24, 1897, the language is that the additional duty shall be levied and paid "upon the importation of any such article," so that this special duty on importations is to be ascertained and assessed in accordance with the provisions of the laws and regulations in effect at the time of importation; and that the date of importation is undoubtedly the date of the arrival of the merchandise in a port of entry in the United States, and not the date of liquidation, or even of the entry, is well settled by the following cases: *U. S.* v. *Vowell,* 9 U. S. 368, 3 L. Ed. 128; *Arnold et al.* v. *U. S.,* 13 U. S. 104, 3 L. Ed. 671; *U. S.* v. *Lyman,* 26 Fed. Cas. 1024; *Perots* v. *U. S.,* 19 Fed. Cas. 258.

The Court of Customs Appeals affirmed the United States District Court on all points.

It should be noted that the countervailing duty statute there under consideration (sec. 5, Tariff Act of 1897), provided "the net amount of" the bounties should be "ascertained, determined, and declared." The statute gave no authority for making an *estimate,* such as exists under the present law. We therefore are of the opinion that the reasons given in said *Franklin Sugar Refining Co.* case *supra* do not apply in the instant case because of the change in the wording of the statute.

On the second point, viz, that Exhibit 1 is not a valid basis for the assessment of countervailing duties, it is observed that the importer relies on two claims of illegality. He states them as follows:

(a) It was not published, promulgated, or proclaimed;

(b) it was not issued until long after the importation of the merchandise in this case.

Importer makes no claim that the countervailing duty was not supported by any law of Germany or, to put it in another way, that Germany had not by statute declared such a bounty or grant, or any bounty or grant, as the Secretary had estimated. Nor has he asserted that there was no bounty or grant given by virtue of a controlled German currency. Consequently the record is silent as to the basis

for having declared the estimated countervailing duty. It may have arisen because of a controlled German currency, or it may have been declared because of some sort of subsidy or premium. That it may have been due to any of these is indicated by T. D. 48463, promulgated August 4, 1936, wherein the Department stated:

The Department is now in receipt of official advice to the effect that for any transactions concluded after July 25, 1936, which cover the indirect or direct exportation of the following goods to the United States, viz, * * * surgical instruments, the German Government will neither authorize the use of the scrip and bond procedure nor permit the payment of a public or private premium or subsidy, nor the employment of other German means of payment than reichsmarks freely convertible into foreign currencies or free reichsmarks usable within the country.

As we view the situation it is of no consequence that Exhibit 1 was not "published," "promulgated," or "proclaimed," if it be a fact that it was not "published," "promulgated," or "proclaimed." The statute (section 303, *supra*) provides that "upon the importation of any such article or merchandise into United States, * * * there shall be levied and paid, an additional duty equal to the net amount of such bounty or grant," etc. T. D. 48360, *supra*, "published," "promulgated," and "proclaimed" the amount of countervailing duty to be collected on importations and, following the principle set forth in Judge Holland's decision, in the *Franklin Sugar Refining Co.* case, *supra*, the fact that a subsequent circular was issued by the Department prior to the liquidation cannot defeat the collector of the amount published, promulgated, and proclaimed in T. D. 48360; even though the said T. D. 48360 further provides that:

The liquidation of all entries covering merchandise of the kinds named below imported directly or indirectly from Germany after thirty days following publication of this notice in the weekly TREASURY DECISIONS, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, * * *.

In view of the conclusion reached by Judge Holland, *supra*, the secretary, having declared the estimated amount to be collected, has complied with the law. We know of no provision of the statute that prohibits him from refunding duties which he believes to have been collected in excess of the amount which should have been collected.

Exhibit 1 simply states the amount due on liquidation. There is nothing in the statute that requires this amount to be published or proclaimed. The importer had a published Treasury decision notice of the amount of countervailing duty he would have to deposit. The Secretary favored such importers by stating that he would compute the net amount due on liquidation. The amount thereof can not be questioned. Having followed the more just and equitable procedure rather than the earlier and harsher method as exemplified

in the *Franklin Sugar Refining Co.* case, *supra*, it is our opinion that the action of the Secretary was well within both the spirit and the letter of the law.

If the basis for the countervailing duty assessment rested on the fact of a controlled currency, there would appear to be no other method by which countervailing duty could be collected with assurance that the taxpayer might not be compelled to pay an amount in excess of the actual amount of the bounty or grant because of the fluctuating character of the currency, changes in policy in the country of exportation, etc. Under the terms of said T. D. 48360 the liquidation of the amount estimated is reserved until the Department can ascertain with absolute certainty what amount should be refunded to the taxpayer, if any, a procedure which is followed in the case of every deposit of duties paid on imported merchandise. Congress undoubtedly intended that the countervailing duty provision in the act should be enforced and in a practical manner. The procedure follows such a course. In our opinion the importer has not made a case.

The claims in the protest are therefore overruled. Judgment for defendant. It is so ordered.