V. MUELLER & CO. v. UNITED STATES.

Customs Appeal No. 4299.

Court of Customs and Patent Appeals.

Nov. 8, 1940.

LENROOT and HATFIELD, Associate Judges, dissenting.

———◇———·

Barnes, Richardson & Colburn, of New York City (Joseph Schwartz, of New York City, of counsel), for appellant.

Charles D. Lawrence, Acting Asst. Atty. Gen. (Richard F. Weeks, Sp. Atty., of New York City, of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the judgment of the United States Customs Court, Third Division, overruling the protest of the importer whereby recovery is sought of certain moneys (specifically $108.11) assessed and collected by the Collector of Customs at the port of Chicago, Illinois, as countervailing duty, provided for in section 303 of the Tariff Act of 1930, 19 U.S.C.A. § 1303, upon certain merchandise described as surgical instruments imported from Germany and entered for consumption (entry No. 2933) in the latter part of September 1936.

Another case in which recovery of a similar duty is sought, but which presents an issue not here involved, is concurrently decided. See F. W. Woolworth Co. v. United States, 115 F.2d 348, 28 C.C.P.A., Customs, ——.

The merchandise in the instant case was assessed with regular duty at the rate of 55 per centum ad valorem under paragraph 359, section 1, of the 1930 Tariff Act, 19 U.S.C.A. § 1001, par. 359, and this assessment is not involved in the controversy.

Appellant's brief states: "The appellant's protest claims that the merchandise is not subject to countervailing duty; and also (by due amendment) that the assessment of countervailing duty is illegal and void because the Secretary of the Treasury has not ascertained and determined, or estimated, and declared and published, the *net amount* of the bounty or grant, as required by Section 303, Tariff Act of 1930, and article 842(b), Customs Regulations, 1931."

Section 303 and article 842(b) of the Customs Regulations of 1931 read:

"Sec. 303 [§ 1303]. *Countervailing duties.*

"Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manufacture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political subdivision of government, and such article or merchandise is dutiable under the provisions of this Act [chapter], then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act [chapter], an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and

shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties."

Art. 842(b). "The net amount of such bounties or grants will be published from time to time by the bureau, with instructions for the collection of the countervailing duties."

In the early part of June 1936 the Treasury Department issued T.D. 48360, approved by the Secretary of the Treasury June 4, 1936 (69 Treas. Dec. 1008), which, so far as here pertinent, reads:

"Treasury Department,
"Office of the Commissioner of Customs,
    "Washington, D. C.

"To Collectors of Customs and Others Concerned:

"Official reports and other data in the files of the Department establish to its satisfaction that bounties and/or grants are paid and/or bestowed, directly or indirectly, on the export to the United States of articles of the kinds named below, which are dutiable under the provisions of the Tariff Act of 1930.

"Notice is hereby given that, pursuant to the provisions of section 303 of the Tariff Act of 1930, countervailing duties equal to any bounty and/or grant found to have been paid and/or bestowed will be collected on articles of the kinds named below when imported directly or indirectly from Germany after thirty days following publication of this notice in a weekly issue of the Treasury Decisions.

"The liquidation of all entries covering merchandise of the kinds named below imported directly or indirectly from Germany after thirty days following publication of this notice in the weekly Treasury Decisions, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected. A deposit of estimated countervailing duties shall be required at the time of entry in an amount equal to the percentage of invoice value stated below in connection with the name of the article.

"The articles subject to this notice are as follows:

| Article | Percentage of invoice value |
|---|---|
| * * * * * * | |
| Surgical instruments | 56 |
| * * * * * * | |

"The facts in regard to each importation within the purview of this notice shall be reported promptly and in full to the Bureau of Customs.

"James H. Moyle,
    "Commissioner of Customs.
"Approved June 4, 1936:
    "H. Morgenthau, Jr.,
        "Secretary of the Treasury.
"[Filed with the Division of the Federal Register June 6, 1936, 10:56 a. m.]"

In the early part of August 1936 T. D. 48360, supra, was amended or modified by T. D. 48463 (70 Treas. Dec. 172) so as to exclude surgical instruments contracted for or purchased after July 25, 1936 from the countervailing duty provision. However, T. D. 48463 is not involved in the instant controversy, it being conceded that the order for the instant merchandise was placed prior to July 25, 1936, although not imported and entered until the latter part of September 1936.

Upon entry the importer deposited the amount of the regular duties (not here involved) assessed under paragraph 359 of the 1930 Tariff Act, and at a later date (appellant's brief states May 3, 1937) deposited the additional sum of $184.80 which was 56 per centum of the invoice value of the merchandise involved in the entry before us, this deposit being required by the instructions contained in T. D. 48360, supra, to cover estimated countervailing duty. In the answer of the Acting Appraiser to the protest of the appellant it is said:

"The merchandise consists of surgical instruments, advisorily returned for duty under paragraph 359, at 55% ad valorem, plus 56% countervailing duty, as per instructions contained in T. D. 48360."

It will be observed that in addition to the instructions in T. D. 48360, supra, requiring a deposit of 56 per centum of the invoice value, the T. D. provided that "liquidation of all entries * * * shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been

paid and/or bestowed, and the net amount of countervailing duties to be collected."

In the instant case the involved entry appears to have been liquidated January 26, 1938, about 16 months after the entry was made. The amount of countervailing duty fixed in the liquidation was $108.11, or $76.69 less than the amount which the importer originally deposited to cover such duty.

The only witness called in the case was the deputy collector in charge of the liquidating division in the customs house at the port of Chicago, Illinois. He was called and examined by the importer, and was not cross-examined by counsel for the Government. He testified that after T. D. 48360, supra, had been issued "we were ordered by the [Customs] Bureau to submit all cases to them for the final amount to be levied." It also appears from his testimony that the collector received instructions from the department to obtain "from the importer all the matter the Department wanted of how he made payment of the invoice valuations. That is, how he settled for this bill."

There was introduced in evidence a photostatic copy of a letter which was addressed to the Collector of Customs at Chicago by the Commissioner of Customs, the same being marked approved by the Acting Secretary of the Treasury November 12, 1937, the pertinent portions of which read:

"Receipt is acknowledged of your letter of October 6, 1937 (208-2), in connection with the applicability of the provisions of section 303 of the Tariff Act of 1930 (U.S.C., title 19, sec. 1303) and (1936) T. D. 48360 to certain importations of German merchandise described as follows:

\*     \*     \*     \*     \*

"Entry No. 2933 V. Mueller & Co. Surgical instruments.

\*     \*     \*     \*     \*

"It has been estimated and it is hereby declared that the net amounts of bounties or grants paid or bestowed with respect to the importations under the first six entries mentioned in the first paragraph of this letter are as follows:

\*     \*     \*     \*     \*

"Entry No. 2933          $108.11

"You are, accordingly, authorized and directed to assess these amounts as countervailing duties in the liquidation of the entries in question.

\*     \*     \*     \*     \* ".

In the course of his testimony the deputy collector explained that the letter of October 6, 1937, alluded to in the last above-quoted Department communication, was "Merely a letter of transmittal of the evidence requested by the Bureau as to the manner of payment of the bill received by the importer together with what we call the entry documents, the entry and invoice."

He also testified to the effect that the amount of the countervailing duty, as assessed and liquidated, was determined entirely from the original of Exhibit 1; that he did not know how the amount was arrived at; that he "would be unable to state" whether the countervailing duty "was based upon the question of the German currency," and that he did not know whether it was based upon the use of registered marks in the purchase of the goods. See F. W. Woolworth Co. case, supra.

With respect to Exhibit 1, supra, the witness testified that the original was not published so far as he knew; that it was not placed "on the bulletin board downstairs," and that it was not "circulated among importers."

To summarize: Acting under section 303 of the Tariff Act of 1930, supra, the Secretary of the Treasury issued and caused to be regularly published, T. D. 48360, supra, in conformity with which the Collector of Customs at the port of Chicago, Illinois, required, and the importer made, a deposit (to cover countervailing duties) of the sum of $184.80, which was 56% of the invoice value of the merchandise. Subsequently, and before liquidation, the collector, under instructions from the Bureau of Customs, forwarded the papers in the case to it, which by letter authorized and directed the former to assess $108.11, stating that to be the amount "estimated" and "declared" to be assessable as countervailing duties. This letter was not published as a T. D., nor otherwise given to the general public, so far as the record discloses. To complete the statement of facts it may be said further that T. D. 48360, supra, does not show the manner in which the bounty or grant was found to be bestowed, nor does it indicate whether the alleged bestowal was by the German Government, or by some other

agency named in section 303, supra. It does recite as the basis of the Secretary's action "Official reports and other data in the files of the Department" and further recites, in effect, that those established to the satisfaction of the Department that a bounty or grant was being paid or bestowed on the export of surgical instruments from Germany to the United States.

The arguments of appellant may be summarized as follows:

First. It is contended that T. D. 48360, supra, is not a sufficient basis for the assessment of countervailing duties in that it "discloses nothing upon which a conclusion could be reached that such payment or bestowal was made by any of the itemized governmental agencies or persons set forth in Sec. 303;" that the statement in the T. D. to the effect that official reports and other data in the files of the Department establish to its satisfaction that bounties or grants are paid or bestowed, directly or indirectly, "clearly does not give to an importer in this country proper information upon which he may determine the basis of an alleged countervailing duty"; that the peculiar language of the T. D. "is such that it makes it impossible for anyone to discover whether the basis of assessment * * * is a bounty or a grant, or a bounty and a grant, or whether the same was paid and bestowed, or paid or bestowed, upon any person or by any person, corporation, or governmental agency," and that this becomes important because importers have the right to litigate the question as to whether the laws of a certain country constitute a bestowal or payment which could form the basis of the assessment of a countervailing duty, the only thing not litigable being the amount of the bounty where the same has been declared by the Secretary.

Second. It is contended that the Secretary of the Treasury had not ascertained, determined, or estimated and published the net amount of any bounty or grant paid or bestowed on the involved merchandise, the argument being that the legality and validity of the assessment in this case "must be predicated upon either T. D. 48360, or Exhibit 1"; that T. D. 48360 "was fatally defective, because in it the Secretary of the Treasury failed to ascertain and determine, or estimate, and declare, the net amount of either a county or grant;" that the T. D. merely determines that a bounty or grant was paid and/or bestowed, and that neither section 303 nor article 842(b) of the Customs Regulations was complied with by a "mere estimate of a *percentage* of invoice values."

Third. It is contended that the letter to the collector, of which Exhibit 1 is a copy, was not a valid basis for the assessment of countervailing duties because (a) it "was not published, promulgated, or proclaimed" and (b) it "was not written until long after the importation of the merchandise in this case."

The brief on behalf of the Government follows generally the order of argument adopted by appellant and traverses the several points advanced by the latter. It is unnecessary to summarize its arguments at this point.

From the foregoing it may be seen that there is no disputed question of fact in this case, the issues tendered being strictly limited to questions of law.

It is proper to say that no question is raised touching the authority of the Secretary of the Treasury to make and promulgate findings of fact in T. D. form, under section 303, supra. In other words, it is not questioned that he is the proper official to proclaim that the condition defined by the section exists. This we say in view of the fact that the statute itself does not expressly declare by what official such finding shall be made. It does expressly name the Secretary of the Treasury as the official to ascertain, determine, or estimate, and declare the amount of the bounty or grant paid or bestowed, and provides that he shall make certain regulations, but (except as these latter matters may be intertwined with the primary fact, or condition, of a bounty or grant being paid or bestowed) there is no definite declaration naming an authority to find such primary fact or condition. We may add that so far as our examination of the practice under countervailing duty provisions of various tariff laws has extended the Secretary of the Treasury has uniformly initiated the procedure by the issuance of Treasury Decisions, which decisions have been in different forms as dictated by the facts or data before the Treasury Department in particular cases.

T. D. 48360, supra, made a basic finding of the payment or bestowal of a bounty or grant as to articles specifically named therein, including surgical instruments, and named the country by which, or in which, the bounty or grant was being paid or be-

stowed when such articles were exported from that country into the United States.

■ We are of the opinion that the presumption of correctness attaches to this finding. Indeed, we do not find its correctness questioned in this case. Appellant nowhere has claimed that the condition described in the T. D. did not exist. Its complaint is rather that the T. D. did not go further and state other facts so that it, from the T. D. itself, might obtain information upon which to contest the finding, the first implication in this regard being that the T. D. should have stated the particular agency or person which paid or bestowed the bounty or grant, and the second, apparently, that it should have shown the manner in which the same was paid or bestowed.

■■ Appellant has cited no authority to sustain this position and we do not think it is tenable. The rule respecting the presumption of correctness attaching to the findings of public officials when proceeding within the limits of official authority and duty is so well settled that no citation of decided cases seems necessary. Here the Secretary of the Treasury found and proclaimed the existence of an ultimate fact defined in a statute with the administration of which he is charged. The proclamation was predicated upon the statute which the T. D. specified. All the factual details respecting the transaction by which appellant secured the exportation of the goods from Germany to it in the United States were of necessity matters within its knowledge. It knew how, where, and from whom the goods were purchased, and the prices paid for them in Germany. It had notice before it ordered the goods that they were held to be subject to countervailing duties.

We hold that it was not essential to the legality and validity of T. D. 48360, supra, that it state either the person or agency, in Germany, paying or bestowing the bounty or grant, or that it set forth the particular manner in which such bounty or grant was paid or bestowed.

■ We do not mean to be understood as holding that appellant had not the right to bring forward any questions of fact relating to the transaction and have them tested by the applicable law, but the burden of showing the facts in detail rested upon it, and it was not incumbent upon the Secretary to go further than he went in this regard.

■ Appellant's second contention involves the construction of that part of section 303, supra, which (after providing for the levy of additional duties in cases where a bounty or grant is found to have been paid or bestowed) reads: "The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated."

T. D. 48360, supra, as issued, contained a provision which amounted to instructions to collectors to require a deposit of 56 per centum of the invoice value of surgical instruments at the time of their entry as "estimated countervailing duties," but further instructed that the administrative act of liquidation be suspended pending declaration of the net total amount of the bounty or grant determined or estimated to have been paid or bestowed, and the net amount of countervailing duties to be collected.

It is the contention of appellant that the requirement of that portion of section 303, supra, last above quoted, was not met by the provision of T. D. 48360, supra, or, to state it more nearly in the language of appellant's brief, was not complied with by a mere estimate of a percentage of invoice values pending the ascertainment and declaration of the net amount of the bounty. It is urged that the statute does not authorize the determination and declaration of a percentage and that its substitution for "net amount" is null and void. By way of argument the brief states:

"The very fact that the Secretary determined that the *net amount* of the bounty and/or grant, determined or estimated to have been paid and/or bestowed, and countervailing duties, *should be declared later,* shows conclusively that at the time of the promulgation of T. D. 48360, the Secretary of the Treasury did not declare any of the necessary elements and particularly the *net amount* of any countervailing duties.

\*   \*   \*   \*   \*   \*

"The fact that the ultimate assessment of $108.11 is only 32.8% of the invoice value conclusively shows that the 56% set forth in T. D. 48360 was in no sense a determination of the net amount of any countervailing duty."

Carried to its logical end, appellant's argument on this phase of the controversy would seem to lead to the conclusion that there could be no compliance with the stat-

ute except by a finding and declaration by the Secretary of the Treasury of a specific net amount (supposedly in dollars and cents and not by percentage) paid or bestowed as bounty in case of each exportation and so due as countervailing duty, in advance of or at least at the time of its importation or entry.

That a holding to this effect would render section 303, supra, nugatory, or at least utterly futile, in many instances must be obvious to all who are reasonably familiar with the processes of international commerce.

The various Congresses which have passed countervailing duty statutes for the protection of our commerce and industries certainly should not have ascribed to them the purpose of doing a futile act, and the courts assuredly are not at liberty to nullify their handiwork.

As has been stated, it is our view that a liability for countervailing duty on the goods involved became fixed as a matter of law by the Secretary's finding of the primary fact, or, as the brief of the Government expresses it, "the liability for countervailing duty attached, at the time of importation, by reason of the declaration of the factum of the bounty antedating the importation, * * *." Section 303, supra, became applicable to the merchandise upon its importation. For countervailing duty purposes that was the law which covered it, and for the purpose of applying the law certain administrative acts were necessary.

In the legal sense all customs duties are assessed by the Collector of Customs. In the case of regular duties which are either specific or ad valorem or a mixture of the two, the rates are definitely fixed by statute, and after classifying the merchandise the collector merely applies the statutory rate. Countervailing duties are neither specific nor ad valorem nor a mixture of the two. They are in a special class, but the statute fixes a standard for their imposition. This standard is an amount "equal to the net amount" of the bounty or grant found or estimated to have been paid or bestowed. The finding of that amount is a ministerial or administrative duty which the statute, for obvious reasons, imposes upon the Secretary of the Treasury. After he makes such finding and advises collectors thereof, the latter automatically assess the amount as a countervailing duty, just as they assess regular duties in conformity with the rates fixed by statute.

We find nothing in section 303, supra, that fixes any definite time at which the Secretary is required to declare the net amount of "each such bounty or grant." The statute says merely that he shall ascertain and determine or estimate it "from time to time." Clearly, Congress contemplated changing conditions in commerce and sought to meet them by broad legislation.

In the case of Franklin Sugar Refining Co. v. United States, 1 Cust.App. 242, T. D. 31276, this court said: "* * * The statute itself contemplates that there may be changes in the foreign law, or that further information may lead to a modification of the orders, as it is directed that the Secretary of the Treasury shall from time to time ascertain, determine, and declare the net amount of such bounties, and make the needful regulations, etc. See also United States v. Klingenberg (153 U.S. 93 [14 S.Ct. 790, 38 L.Ed. 647]) and Hadden v. Merritt (115 U.S. 25 [5 S.Ct. 1169, 29 L.Ed. 333])."

The statute does not require the finding and declaration of the net amount in definite terms of currency, nor does it require that a *definite* amount be found and declared. It makes express provision for *estimating,* and that, clearly, was what initially was done in this case. The Secretary, doubtless from the "Official reports and other data in the files of the Department" at the time of the issuance of the T. D., estimated that the bounty or grant which was being paid or bestowed upon the export of surgical instruments from Germany to the United States amounted to 56% of the invoice value of such goods and so declared. He was dealing broadly with a general condition and laying down a set of findings and instructions to cover generally the importation of surgical instruments and various other classes of merchandise from Germany. It would be unreasonable to suppose that at the time of the issuance of the T. D. the Secretary had any information, or even an intimation, of the particular transaction by the particular importer here involved. The transaction, in fact, took place after the T. D. had issued. Under the condition existing, a finding or estimate could not have been expressed in dollars and cents to cover each and every importation of surgical instruments, but its expression in terms of percentage was entirely feasible, and, in our opinion, proper, legal, and in conformity with the statute. Each importer,

of course, had only to make a simple mathematical computation (multiply the total invoice value of the importation by .56) in order to find the amount in terms of dollars and cents.

In discussing this point, Evans, J., author of the opinion below, very pertinently said:

"It is our opinion that the Secretary of the Treasury acted within the authority of section 303, supra, in directing the percentage of additional deposit. The language of the statute directing his action provides that he 'shall from time to time ascertain and *determine,* or *estimate,* the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated.' [Italics supplied.] When a foreign country has declared a bounty or a fixed amount, by a statute, the Secretary can readily 'ascertain and determine' the amount thereof and can so declare as, for instance, the rate of duty imposed by Belgium on motor cars or the rate of duty imposed by Germany on cardboard, etc. (T. D. 41934), but where the bounty or grant is made through or by means of a manipulated currency, for instance, then the Secretary must resort to the other direction in the statute, viz., 'he shall from time to time * * * estimate the net amount of each * such bounty or grant, and shall declare the net amount so * * * estimated.'

"Webster New International Dictionary, Second Edition, defines 'estimate' as follows: '2. a To fix the worth, value, size, extent, etc., of esp. roughly or in a general way.'

"T. D. 48360 fixes the amount roughly or in a general way at 56 per centum. Thus the importer is advised first, that Germany has granted a favor or bounty on the merchandise involved (a fact not disputed herein). Second, he is advised of the definite amount he must deposit with his other estimated amount of duties collected on entry. He is also notified that like his other estimated amount of duty to be deposited, this percentage amount will be liquidated at a subsequent date to the end that only the 'net amount' of Germany's grant will be required to be paid by him into the Treasury of the United States."

In arguing the foregoing point appellant treated article 842 (b) Customs Regulations of 1931, supra, in conjunction with T. D. 48360, supra, and that article was also brought into its argument bearing upon its third point which relates to the letter from the Treasury Department to the Collector of Customs at Chicago, Illinois, of which Exhibit 1, the pertinent portions of which are quoted, supra, is a photostatic copy.

The meaning of article 842 (b), supra, as we construe it, is that the Bureau of Customs will, from time to time, publish the net amount of the bounties or grants found by the Secretary, in conformity with section 303, supra, to have been paid or bestowed, with instructions for the collection of countervailing duties.

Appellant contends that a holding of the legality and validity of the assessment made in this case "must be predicated upon either T. D. 48360 or Exhibit 1," and, under its theory respecting T. D. 48360, supra, finally contends that "the only possible thing remaining to support the assessment, is Exhibit 1." It then argues that since Exhibit 1 "was not published, promulgated, or proclaimed," the assessment was illegal and void.

It is our view that so far as article 842 (b), supra, may be deemed to have any application in connection with T.D. 48360, supra, it was met by the publication in the T. D. itself of the net amount of the bounty or grant estimated upon a percentage basis to have been paid or bestowed. The deposit required was expressly defined as covering "estimated countervailing duties."

In considering the contention respecting the application of article 842 (b), supra, to the letter of which Exhibit 1 is a copy, it is important to bear in mind the exact nature of the letter and its relation to this transaction. At the outset it should be said that, in our view of the case, the letter did not in anywise affect the primary and all-essential finding that a bounty or grant was being paid or bestowed (as expressed in T. D. 48360, supra), which brought section 303, supra, into operation as to surgical instruments. So, appellant's *liability* for countervailing duty was not affected by the letter. Appellant knew at the time it placed the order for the goods, or at least it had constructive notice at the time of their importation, that a prima facie liability for such duty existed. Furthermore, it knew that the amount of such duty had been estimated (and that the statute authorized estimation) at 56% of the invoice value of the goods, and it made deposit of a sum equal to such 56%—specifically $184.80 expressed in terms of currency. The only practical effect of the

letter upon appellant was to cause a liquidation which resulted in the refund to it of $76.79. It seems to be practically conceded here that if T. D. 48360, supra, was a compliance with the statute, as we have held it to be, the amount originally required to be deposited as "estimated countervailing duties" might have been retained by the Government and that appellant could not have litigated the question of such amount. Whether such be conceded or not, it seems to be the law expressed in various decided cases. See Downs v. United States, 187 U.S. 496, 23 S.Ct. 222, 47 L. Ed. 275, which affirmed the decision of the United States Circuit Court of Appeals of the Fourth Circuit, 113 F. 144, affirming that of the Board of General Appraisers (now the United States Customs Court) T. D. 24355, and the various cases cited in those respective decisions.

■ It is our view that the requirement of a 56% deposit was, within the meaning of the statute, an assessment, although not a final liquidation; that the action following the letter was nothing more than a revision of the amount when the act of liquidation took place, and that it was not essential to the validity of the assessment that the letter be published as a T. D. or otherwise proclaimed to the public. We agree with the holding of the trial court that this view is supported by certain of the reasoning in the Franklin Sugar Refining Co. case, supra, particularly the reasoning of the United States Circuit Court, E. D. of Pennsylvania, 178 F. 743 (whose decision we affirmed), which is set forth at length in the trial court's decision in this case. We assume, as we must in the absence of any contention or evidence to the contrary, that following the liquidation, notice thereof was posted in the manner common to all liquidations.

There is a contention on the part of appellant relating to the matter of uniformity. This contention is based upon appellant's theory that the letter, prototype of Exhibit 1, supra, constituted the only basis to support the assessment, and the brief directs attention to certain language used in this court's decision in the Franklin Sugar Refining Co. case, supra, where, in discussing the question of whether a determination by the Secretary of the Treasury is controlling, or may be impeached collaterally, we cited a number of cases, and said: "We think * * * that the reason upon which the cases rest involves the proposition that the delegation of this power to the Secretary of the Treasury is as much for the purpose of securing uniformity throughout the various ports of entry of the country and to advise the importer of the exact amount of the countervailing duty at the time of the importation as it is to reach the correct result."

After quoting the foregoing, appellant's brief argues: "It is certain that a letter such as Exhibit 1 fails by far to achieve 'the purpose of securing uniformity throughout the various ports of entry'; and 'to advise the importer of the exact amount of the countervailing duty *at the time of the importation.*' Exhibit 1 was not printed as a Treasury Decision. It was not published. * * *"

■ In view of our conclusion respecting the force and effect of T. D. 48360, supra, and the immateriality, so far as the validity of the assessment is concerned, of the nonpublication of the letter, this contention may be dismissed with little comment.

T. D. 48360, supra, by providing for a deposit of 56%, assured uniformity and that was not destroyed by the subsequent letter. The record discloses nothing which indicates that any importer of surgical instruments at any port failed to receive any treatment different from that accorded appellant. Obviously, if there were other importations of surgical instruments differing in quantity or in price, the amounts of the original deposits required of the various importers would have differed, as would the amounts refunded, but this situation did not affect uniformity of treatment.

■ Another of appellant's contentions relates to the phrase "upon the importation," appearing in section 303, supra, this contention being, as we understand it, that the levy provided for must be made upon, or at the time of, importation, and hence the statute requires ascertainment of the net amount of the bounty or grant in advance of or at least at the time of the act of importation. Here again the contention rests upon the theory that only the letter to the collector (prototype of Exhibit 1) constituted the statutory finding relative to "net amount," thus eliminating T. D. 48360, supra; and here again, under our views already expressed, there need be little comment.

Appellant (supplying the italics) quotes the following from this court's decision in the Franklin Sugar Refining Co. case, supra: "We think the language of section 5 of the act of 1897 makes it very clear that the additional duty shall be levied and paid *upon the importation of the article.* The obligation then arising to pay the tax *on the importation,* the fact that this final payment in liquidation of liability is postponed, does not affect that liability."

Appellant's brief then points out that the letter in question was not written until long after the importation of the merchandise, and insists that the "upon the importation" provision was not met.

It is obvious from the decision of the trial court that the same contention was made before it, and that tribunal answered it as follows: "It should be noted that the countervailing duty statute there [Franklin Sugar Refining Co. case, supra,] under consideration (Sec. 5, Tariff Act of 1897), provided 'the net amount of' the bounties should be 'ascertained, determined, and declared.' The statute gave no authority for making an *estimate,* such as exists under the present law. We therefore are of the opinion that the reasons given in said Franklin Sugar Refining Co. case, supra, do not apply in the instant case because of the change in the wording of the statute."

Appellant's brief replies to the foregoing observation of the trial court with the following: "It is submitted that this is no valid distinction. While it is' true that the present statute permits the Secretary to make an estimate, it does not permit him to make an estimate of a percentage, but of the *net amount* of the bounty or grant."

So, we are returned to the contention already dealt with respecting an estimate in percentage not being an estimate of the net amount.

We are of the opinion that the change in language has a great significance which may not be disregarded. It would seem as though the word "estimate" might have been inserted in section 303, supra (apparently it first appeared in the Tariff Act of 1930), to meet just such a condition as is shown to exist here, and, to our minds, its inclusion adds to the reasonableness of sustaining a finding based upon percentage, and opens the way for legitimate pursuit *of the* course which was followed in this case after it was found that the amount originally estimated "as countervailing du-

ties" was in excess of such estimation; that is refunding the excess.

We are not convinced that there was error in the decision of the trial court and its judgment is affirmed.

Affirmed.

LENROOT, Judge.

I dissent from the conclusion reached by the majority and the reasoning upon which it is based.

My ground of dissent is that the "net amount" of bounty here involved has never been declared by the Secretary of the Treasury as provided by law.

Section 303 of the Tariff Act of 1930 19 U.S.C.A. § 1303, provides in part: "* * * The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, *and shall declare the net amount so determined or estimated.*" (Italics mine.)

The majority opinion holds that T.D. 48360, quoted in full in the majority opinion, was a full compliance with the requirements of section 303, supra, requiring the Secretary to "declare the net amount so determined or estimated." In my opinion this holding does violence to the plain and unambiguous language of T.D. 48360.

The language therein upon this point reads:

"The liquidation of all entries * * * shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected. A deposit of estimated countervailing duties shall be required at the time of entry in an amount equal to the percentage of invoice value stated below in connection with the name of the article.

"The articles subject to this notice are as follows:

| Article | Percentage of invoice value |
|---|---|
| * * * * | * * |
| Surgical instruments ............ | 56 |
| * * * * | * * " |

If this T.D. was a full compliance with the statute, there was no occasion or warrant for the suspension of the liquidation of all entries covering surgical instruments, for section 303 plainly requires that the

net amount of the bounty "determined or estimated" and declared shall be levied as additional duties.

Under the plain language of T.D. 48360 the liquidation of the entries was suspended "pending the declaration of the net total amount of the bounty and/or grant determined or estimated to have been paid and/or bestowed * * *." I do not see how language could be plainer that a declaration of the net total amount of the bounty would *thereafter* be made, and that the liquidation of the entries should be suspended until such declaration should be made.

The 56% estimate of duties provided for in said T.D. clearly had no relation to section 303, but undoubtedly was assumed by the Secretary to be in compliance with section 505, 19 U.S.C.A. § 1505, relating to payment of duties, which provides that a consignee shall deposit with the collector, at the time of making entry, "the amount of duty estimated to be payable thereon." The section further provides that the collector shall "fix, and liquidate the rate and amount of duties to be paid" and "collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation." The purpose of the deposit was to protect the revenues of the Government, and it is clear that under said T.D. neither the Government nor the importer was bound by the estimate of 56%.

Under the theory of the majority, if, upon a later declaration of the "net total amount of the bounty * * *" by the Secretary of the Treasury and assessment thereunder, it appeared that the deposit of estimated duties was in excess of the said "net total amount of the bounty," a refund would be made, as in the case at bar; but, under that theory, it was equally within the province of the Secretary to increase the net total amount of bounty in any sum, which might equal or exceed 100%, and direct the collection from the importer of the additional duty.

That the Secretary of the Treasury never intended that the estimate of 56% should be considered as a declaration of the "net total amount of the bounty" is plain from Exhibit 1, quoted in the majority opinion, the same being a letter approved by the Acting Secretary of the Treasury, addressed to the Collector of Customs at Chicago, more than a year after the date of the importation involved. This letter stated in part:

"It has been estimated and it is *hereby declared* that the net amounts of bounties or grants paid or bestowed with respect to the importations under the first six entries mentioned in the first paragraph of this letter are as follows: (Italics mine.)

\*       \*       \*       \*       \*

"Entry No. 2933                    $108.11

"You are, accordingly, authorized and directed to assess these amounts as countervailing duties in the liquidation of the entries in question.

\*       \*       \*·       \*       \*       \*".

It is conceded that this letter was never published, but was merely a letter of instruction to the collector at Chicago. It does not conform in amount to the estimated duties set out in said T.D., and said letter is the first act of the Secretary purporting to estimate and declare the "net total amount of the bounty * * *."

This is so plain to me that I am utterly unable to conceive how any other conclusion can be reached.

The majority opinion states: "It is our view that the requirement of a 56% deposit was, within the meaning of the statute, an assessment, although not a final liquidation; that the action following the letter was nothing more than a revision of the amount when the act of liquidation took place, and that it was not essential to the validity of the assessment that the letter be published as a T.D. or otherwise proclaimed to the public. .* * *"

How the requirement of T.D. 48360 that a deposit be made by the importer of estimated countervailing duties, pending a determination and declaration by the Secretary of the "net total amount of the bounty", can be considered to be an assessment, as stated in the majority opinion, I am wholly unable to understand. It does not purport to be an assessment, but merely requires a deposit to await an assessment to be made at some later date.

The majority opinion recognizes that under section 303 there must have been some publication of the Secretary's estimate of the net total amount of the bounty, and I am in agreement with this view; but even had Exhibit 1 been published, in my opinion the declaration therein made could not be held to apply to the importation here involved, because made long after the date of such importation.

The declaration of the amount of the bounty, either by a percentage of the invoice price or a fixed sum, must have been in existence at the time of the importation of the goods here involved. This was determined in the case of Franklin Sugar Refining Co. v. United States, 1 Cust.App. 242, T.D. 31276, which involved countervailing duties levied under that provision of section 5 of the Tariff Act of 1897 which read as follows: "* * * The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties."

It will be observed that this provision is substantially the same as the provision of section 303, supra, relating to the duties of the Secretary of the Treasury, except that in the latter section the term "estimate" is included, which term is not found in section 5 of the act of 1897. This, however, in my opinion is not material here for the reason that, while section 303 provides that the Secretary shall ascertain and determine or "estimate" the net amount of the bounty, it also provides that he shall also "declare the net amount so determined or estimated."

In the Franklin Sugar Co. case, supra, certain importations of raw beet sugar were made. At the time of such importations there was in existence a determination and declaration by the Secretary of the Treasury of a bounty upon such sugar under the law of Germany of 2.50 marks per 100 kilos. Subsequent to said importations, and prior to the liquidations of the entries respecting them, the Secretary of the Treasury made a new ascertainment and declaration of the bounty allowed by Germany and fixed the same at 2.40 marks per 100 kilos. The importer claimed that the liquidations should have been made upon the basis of 2.40 marks per 100 kilos. The court held that the determination and declaration in existence at the time of importation should govern the amount of duty, and not the second declaration in effect at the time of the liquidation of the entries.

The court in its opinion stated:

"The questions presented are, first, whether the rate as determined and in force at the time of the importation should govern, or whether, on the other hand, the determination at the date of the final liquidation should be adopted; second, whether it is competent to show by independent testimony, or by the fact of a later determination coupled with testimony showing that the law in force in Germany at the time of the first determination had not been changed, that the rate of 2.40 marks per 100 kilos was in fact the correct rate, and that therefore the orders of July, 1897, and September, 1897, should be disregarded.

"We think the language of section 5 of the act of 1897 makes it very clear that the additional duty shall be levied and paid upon the importation of the article. The obligation then arising to pay the tax on the importation, the fact that this final payment in liquidation of liability is postponed, does not affect that liability.

\*    \*    \*    \*    \*

"Congress might have left it open in each case for proof to be offered and for the collector in each case to determine what the actual bounty paid by the country of origin was; but Congress saw fit in its wisdom to provide that there should be uniformity in all ports of entry in the country, and as to all importers, and therefore that the amount of bounty paid upon exportations of sugar should be ascertained and declared by the collector of customs. Manifestly this would be of little value if it could be controverted on every importation. Uniformity would not be obtained under such circumstances, nor would a subsequent modification of the determination by the Secretary of the Treasury work out uniformity if it were permitted to be applied in one case and not in all. The statute itself contemplates that there may be changes in the foreign law, or that further information may lead to a modification of the orders, as it is directed that the Secretary of the Treasury shall from time to time ascertain, determine, and declare the net amount of such bounties, and make the needful regulations, etc. See also United States v. Klingenberg (153 U.S. 93 [14 S.Ct. 790, 38 L.Ed. 647]) and Hadden v. Merritt (115 U.S. 25 [5 S.Ct. 1169, 29 L.Ed. 333])."

The court concluded its opinion with the following: "We think, however, that the reason upon which the cases rest involves the proposition that the delegation of this power to the Secretary of the Treasury is as much for the purpose of securing uniformity throughout the various ports of entry of the country *and to advise the importer of the exact amount of the countervailing duty at the time of the importation* as it is to reach the correct result. As is indicated by the quotation from the case of Cramer v.

Arthur [102 U.S. 612, 26 L.Ed. 259] (supra), the delegation of this power was for the purpose of avoiding confusion and uncertainty and to reach a result which should be final and conclusive." (Italics mine.)

The Franklin Sugar Co. case, supra, was decided in 1911; since that time three tariff bills have been enacted by Congress, and with the exception of the addition of the provision for estimating in section 303 of the Tariff Act of 1930, all of these subsequent tariff acts have contained provisions substantially identical with the provision construed in said Franklin Sugar Co. case.

That case having decided that bounties the subject of countervailing duties must have been declared at the time of importation of merchandise subject thereto, and Congress, presumably having knowledge of such decision, having made no substantial change in similar provisions in subsequent tariff acts, the doctrine of legislative adoption of judicial decision is applicable and the decision in the said case should be regarded as controlling upon the question of whether a countervailing duty may be levied with respect to any importation prior to the declaration of the net total amount of the bounty made the basis of the countervailing duty.

Of course the Treasury Department is bound by the law, and it is clear to me that T. D. 48360 is clearly a departure therefrom.

The Secretary could have fully protected the Government by declaring the net total amount of the bounty in said T. D. 48360; but he did not do so, and clearly did not intend to do so. If the Secretary had done so, and later concluded that the net total amount of the bounty so declared was too high, he could, by a new published declaration, reduce the amount of the bounty, which would be applicable to importations made subsequent to such second declaration.

For the reasons I have stated, I am of the opinion that the judgment appealed from should be reversed.

I am authorized to say that Judge HATFIELD concurs in the views herein expressed.