## FRANKLIN SUGAR REFINING CO. v. UNITED STATES (No. 282).[1]

COMPUTING A COUNTERVAILING DUTY.

Under the tariff act of 1897 the Secretary of the Treasury possessed full authority to assess and collect duties imposed by law to countervail foreign-paid bounties, and his determination, as of the date of the importation itself, of the amount of bounty granted on an exportation of raw beet sugar from Germany and imported here is not open to collateral attack and is final.—*Cramer v. Arthur* (102 U. S., 612) cited and approved.

### United States Court of Customs Appeals, February 1, 1911.

APPEAL from the decision of the United States Circuit Court, Eastern Division of Pennsylvania (T. D. 27309).

[Affirmed.]

*John G. Johnson* and *James Wilson Bayard* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

In the months of June, July, and August, 1898, the appellant imported from the Empire of Germany large quantities of raw beet sugars, which were duly entered at the port of Philadelphia. Final liquidation was not had, however, until June 27, 1899, on one importation, and at various dates in the month of January, 1901. Protests were filed against these liquidations within the time allowed by law. The sole question presented by these protests is whether the countervailing duty laid upon these importations was in excess of the export bounty under the laws of the Empire of Germany.

It is conceded that the sugars were under the law of Germany entitled to an export bounty; but it is contended that the determination of the Secretary of the Treasury and of the collector that the amount of such bounty was 2.50 marks per 100 kilos was erroneous, and, further, that inasmuch as subsequent to the importation in question, and prior to the final liquidation, a new ascertainment and determination of the provisions of the German law was made by the Secretary and the net amount of the bounty allowed by Germany was declared to be 2.40 marks per 100 kilos, the liquidation should have been on this basis.

---

[1] Reported in T. D. 31276 (20 Treas. Dec., 236).

The authority conferred upon the Secretary of the Treasury is found in the act imposing a duty.   Section 5 of the tariff act of 1897, so far as it is material, reads as follows:

That whenever any country, dependency, or colony shall pay or bestow, directly or indirectly, any bounty or grant upon the exportation of any article or merchandise from such country, dependency, or colony, and such article or merchandise is dutiable under the provisions of this act, then upon the importation of any such article or merchandise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed.   The net amount of all such bounties or grants shall be from time to time ascertained, determined, and declared by the Secretary of the Treasury, who shall make all needful regulations for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

Acting under the authority conferred by the latter portion of this section, the Assistant Secretary of the Treasury, on the 31st of July, made a tentative determination or declaration of the rate of bounty paid under the German law.   On the 22d of September, 1897, a further determination was made by the Assistant Secretary, acting under the authority of the statute, and after quoting the statute the determination proceeds as follows:

In pursuance of these provisions, the following amounts of bounties respectively paid, on the exportation of sugars, by the countries hereinafter named, are hereby declared for the assessment of additional duties on sugars imported from, or the product of, such countries or their dependencies, viz: * * * Germany. 1. On raw sugar at least 90 per cent polarization and on refined sugar under 98 per cent and at least 90 per cent, 2.50 marks per 100 kilos.

On the 12th of December, 1898, the Secretary of the Treasury again issued a like order determining that the bounty paid by Germany was 2.50 marks per 100 kilos.

On the 20th of June, 1899, the Treasury Department issued a circular in which the Secretary declared and determined the bounty paid by Germany to be 2.40 marks per 100 kilos.

The questions presented are, first, whether the rate as determined and in force at the time of the importation should govern, or whether, on the other hand, the determination at the date of the final liquidation should be adopted; second, whether it is competent to show by independent testimony, or by the fact of a later determination coupled with testimony showing that the law in force in Germany at the time of the first determination had not been changed, that the rate of 2.40 marks per 100 kilos was in fact the correct rate, and that therefore the orders of July, 1897, and September, 1897, should be disregarded.

We think the language of section 5 of the act of 1897 makes it very clear that the additional duty shall be levied and paid upon the importation of the article. The obligation then arising to pay the tax on the importation, the fact that this final payment in liquidation of liability is postponed, does not affect that liability. · The really important question is whether the determination when made by the Secretary of the Treasury, or by the Assistant Secretary who is authorized to act for him, is controlling, or whether that determination may be impeached collaterally.

The precise question has only arisen in the present case and in a later case, decided on the 10th of March, 1910, in which the present appellant was a party, and which is found reported in 178 Fed. Rep., 747. But a similar question has arisen under the law providing that the value of foreign coins in the currency of this country shall be ascertained and declared periodically by the Secretary of the Treasury. The question has been before the courts in numerous cases as to whether this proclamation of the Secretary of the Treasury was conclusive, and uniformly it has been held that such was its effect.

In Cramer v. Arthur (102 U. S., 612), in dealing with that question, it was said:

That valuation, so long as it remained unchanged, was binding on the collector and on importers—just as binding as if it had been in a permanent statute, like the statute of 1846, for example. Parties can not be permitted to go behind the proclamation, any more than they would have been permitted to go behind the statute, for the purpose of proving by parol or by financial quotations in gazettes, that its valuations are inaccurate. The Government gets at the truth, as near as it can, and proclaims it. Importers and collectors must abide by the rule as proclaimed. It would be a constant source of confusion and uncertainty if every importer could, on every invoice, raise the question of the value of foreign moneys and coins. * * *
* * * * * * *
The proclamation of the Secretary and the certificate of the consul must be regarded as conclusive. In the estimation of the value of foreign moneys for the purpose of assessing duties, there must be an end to controversy somewhere. When Congress fixes the value by a general statute, parties must abide by that. When it fixes the value through the agency of official instrumentalities, devised for the ·purpose of making a nearer approximation to the actual state of things, they must abide by the values so ascertained. If the currency is a standard one, based on coin, the Secretary's proclamation fixes it; if it is a depreciated currency, the parties may have the benefit of a consular certificate. To go behind these and allow an examination by affidavits in every case would put the assessment of duties at sea. It would create utter confusion and uncertainty. If existing regulations are found to be insufficient, if they lead to inaccurate results, the only remedy is to apply to the President, through the Treasury Department, to change the regulations. From the letter of the Secretary exhibited in this case, we infer that this was afterwards done, and that he made the desired change. But this change in the regulations does not affect prior transactions which took place before they went into effect. These transactions must be governed by the regulations in force at the time. It is of the utmost consequence to the Government, and it is, on the whole, most beneficial to importers, that the value of foreign moneys should be officially ascertained, and that they should be fixed by a uniform method or rule.

We think this language is peculiarly appropriate to the subject of this litigation. Congress might have left it open in each case for proof to be offered and for the collector in each case to determine what the actual bounty paid by the country of origin was; but Congress saw fit in its wisdom to provide that there should be uniformity in all ports of entry in the country, and as to all importers, and therefore that the amount of bounty paid upon exportations of sugar should be ascertained and declared by the collector of customs. Manifestly this would be of little value if it could be controverted on every importation. Uniformity would not be obtained under such circumstances, nor would a subsequent modification of the determination by the Secretary of the Treasury work out uniformity if it were permitted to be applied in one case and not in all. The statute itself contemplates that there may be changes in the foreign law, or that further information may lead to a modification of the orders, as it is directed that the Secretary of the Treasury shall from time to time ascertain, determine, and declare the net amount of such bounties, and make the needful regulations, etc. See also United States *v.* Klingenberg (153 U. S., 93) and Hadden *v.* Merritt (115 U. S., 25).

Fixing the value of foreign coin is not the only instance in which the final determination of questions under the tariff law is left to the Secretary of the Treasury. See the cases of Ferry *v.* United States (85 Fed. Rep., 550), Buttfield *v.* Stranahan (192 U. S., 470), and United States *v.* American Express Co. (177 Fed. Rep., 735).

It is urged, however, that the authority to fix the value of foreign coins is a different power from that exercised in this case. It is said:

A coin is a concrete thing, the composition and the value of the component parts of which can only be determined by delicate chemical analysis and most accurate and careful weighing. They are physical facts which can only be ascertained by experts and as to which there are no effective means of verifying different ascertainments. Obviously, therefore, some standard ascertainment by some expert must be adopted; and such result is attained through the statutes referred to by the court below. * * * In the present case, on the other hand, the matter for determination is the meaning of a written instrument—a statute of a foreign country.

We think, however, that the reason upon which the cases rest involves the proposition that the delegation of this power to the Secretary of the Treasury is as much for the purpose of securing uniformity throughout the various ports of entry of the country and to advise the importer of the exact amount of the countervailing duty at the time of the importation as it is to reach the correct result. As is indicated by the quotation from the case of Cramer *v.* Arthur (*supra*), the delegation of this power was for the purpose of avoiding confusion and uncertainty and to reach a result which should be final and conclusive.

The Board of General Appraisers and the Circuit Court having reached a conclusion in harmony with what we have stated above, the decision will be *affirmed*.