ROBERT E. MILLER & CO., INC. *v.* UNITED STATES (No. 4527)[1]

---

[1] C. A. D. 349.

United States Court of Customs and Patent Appeals, November 4, 1946

*John D. Rode* for appellant.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1946, by Mr. Rode and Mr. Donohue]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division (C. D. 940), overruling appellant's protest, claiming that the collector of customs at the port of New York had improperly levied a countervailing duty in the sum of $75.17 on an importation of thumbtacks.

There is no dispute concerning the facts. It appears that the goods were ordered from Germany on November 28 and December 9, 1936. They were entered for consumption and estimated duty was paid on February 24, 1937. The merchandise was appraised on October 7, 1940, and the entry liquidated on October 6, 1942, at the statutory dutiable rate plus the countervailing duty. The amount in money of the countervailing duty was fixed by the Commissioner of Customs and approved by the Secretary of the Treasury September 23, 1942, under the provisions of section 303 of the Tariff Act of 1930 and T. D. 48360 (69 Treas. Dec. 1008). The length of time which elapsed between entry and appraisement was the result of an investigation under the Antidumping Act of 1921 (U. S. C. title 19, sec. 160 et al.) ordered in T. D. 46615 (64 Treas. Dec. 216), dated September 12, 1933, and revoked in T. D. 50234 (76 Treas. Dec. 87), dated August 29, 1940.

The imported goods were paid for on April 10, 1937, in Aski marks which were purchased at a lower price than the current value of free

or gold reichsmarks. Aski marks were of the class of currency which, under German regulation, could be used in payment for exported goods and subsequent to such use were redeemed by the German Government at the same value as free reichsmarks thereby enabling the German manufacturer to dispose of his exported goods at a "dollar-equivalent" less than would otherwise be charged.

The pertinent section of the Tariff Act of 1930 and the Treasury Decisions involved read as follows:

### SEC. 303. COUNTERVAILING DUTIES

Whenever any country, dependency, colony, province, or other political subdivision of government, person, partnership, association, cartel, or corporation shall pay or bestow, directly or indirectly, any bounty or grant upon the manu-facture or production or export of any article or merchandise manufactured or produced in such country, dependency, colony, province, or other political sub-division of government, and such article or merchandise is dutiable under the provisions of this Act, then upon the importation of any such article or merchan-dise into the United States, whether the same shall be imported directly from the country of production or otherwise, and whether such article or merchandise is imported in the same condition as when exported from the country of production or has been changed in condition by remanufacture or otherwise, there shall be levied and paid, in all such cases, in addition to the duties otherwise imposed by this Act, an additional duty equal to the net amount of such bounty or grant, however the same be paid or bestowed. The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated. The Secretary of the Treasury shall make all regulations he may deem necessary for the identification of such articles and merchandise and for the assessment and collection of such additional duties.

---

(T. D. 48360)

\*       \*       \*       \*       \*       \*       \*

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C.*

*To Collectors of Customs and Others Concerned:*

Official reports and other data in the files of the Department establish to its satisfaction that bounties and/or grants are paid and/or bestowed, directly or indirectly, on the export to the United States of articles of the kinds named below, which are dutiable under the provisions of the Tariff Act of 1930.

Notice is hereby given that, pursuant to the provisions of section 303 of the Tariff Act of 1930, countervailing duties equal to any bounty and/or grant found to have been paid and/or bestowed will be collected on articles of the kinds named below when imported directly or indirectly from Germany after 30 days following publication of this notice in a weekly issue of the TREASURY DECISIONS.

The liquidation of all entries covering merchandise of the kinds named below imported directly or indirectly from Germany after 30 days following publication of this notice in the weekly TREASURY DECISIONS, shall be suspended pending the declaration of the net total amount of the bounty and/or grant determined

or estimated to have been paid and/or bestowed, and the net amount of countervailing duties to be collected. A deposit of estimated countervailing duties shall be required at the time of entry in an amount equal to the percentage of invoice value stated below in connection with the name of the article.

The articles subject to this notice are as follows:

| Article | | | | | | Percentage of Invoice Value |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |
| Thumb tacks | | | | | | 31 |
| * | * | * | * | * | * | * |

The facts in regard to each importation within the purview of this notice shall be reported promptly and in full to the Bureau of Customs.

JAMES H. MOYLE,
*Commissioner of Customs.*

Approved June 4, 1936:
H. MORGENTHAU, Jr.
*Secretary of the Treasury.*

[Filed with the Division of the Federal Register June 6, 1936, 10:56 a. m.]

---

(T. D. 48479)

*Countervailing duties—German products*

T. D. 48360, as amended by T. D. 48444 and modified by T. D. 48463, not applicable to certain importations of the several classes of commodities listed therein

TREASURY DEPARTMENT,
OFFICE OF THE COMMISSIONER OF CUSTOMS,
*Washington, D. C.*

*To Collectors of Customs and Others Concerned:*

The Department is in receipt of official advice to the effect that, with respect to any dutiable merchandise which will be or has been exported directly or indirectly from Germany pursuant to agreements entered into after August 2, 1936, the German Government has taken measures to insure that no scrip or bond procedure was or will be allowed; no public or private bounty or subsidy was or will be paid, and that the use of no German currency other than free gold exchange marks, or free inland marks was or will be permitted.

In view of the foregoing, the provisions of T. D. 48360, as amended by T. D. 48444 and modified by T. D. 48463, shall not apply to direct or indirect imports from Germany of the commodities listed therein if the collector of customs concerned shall be satisfied by documentary evidence that the contract of purchase or other agreement pursuant to which they were exported from Germany was entered into after August 2, 1936, or, in the cases of cameras, calf and kid leather, and surgical instruments, after July 25, 1936.

FRANK DOW,
*Acting Commissioner of Customs.*

Approved August 14, 1936:
JOSEPHINE ROCHE,
*Acting Secretary of the Treasury.*

Appellant contended below and contends here that the importer purchased the goods pursuant to an agreement entered into subsequent to August 2, 1936, and that because the collector at the time of

entry did not assess countervailing duty thereon, he was "satisfied by documentary evidence that the contract of purchase or other agreement pursuant to which they were exported from Germany was entered into after August 2, 1936 * * *" and, therefore, that the merchandise came within the scope of T. D. 48479 (70 Treas. Dec. 201), that the assessment of countervailing duty for the first time upon liquidation lacked authority in law and that such assessment without giving importers at least 30 days notice contravened a long-established administrative practice.

One of the Government's exhibits in evidence is a letter dated August 7, 1936, from the exporter to appellant acknowledging receipt of certain orders and, among other things, contains the following:

> We are sorry to have to inform you that since the 3rd of August 1936 any further barter permits will not be given any more. we [sic] are further informed that it is also impossible since the 3rd inst. to pay in ASKI- or Register-Marks. Permits given must be settled soonest but no further will be agreed.
>
> \* \* \* \* \* \* \*
>
> We hope that in the very next days we exactly know what is to be done, also whether we can deliver at the old figures and whether [sic] the 31% extra duty overthere [sic] can be avoided.

The sole witness, on plaintiff's behalf, testified that that letter had nothing to do with the involved importation. While that may be so, the meaning of those quotations is clear. Appellant was thereby notified he could no longer pay for thumbtacks in Aski marks and there is the suggestion in the letter that countervailing duty might, in some fashion, be avoided.

Another government exhibit is a letter to the exporter from appellant, dated November 5, 1936, in which the following appears:

> The thing we want to know is whether [sic] you can use our orders placed before August 3rd for 10 million American Style Thumb Tacks or any other orders for payment in Aski Marks. \* \* \* Let us know how many more orders we can send you and we will send these at once. We are not interested for payment in Gold Marks.

The only reasonable meaning of that quotation, in our opinion, is that appellant was seeking information, not only as to how its orders placed before August 3 could be paid for, but also as to how many orders it could send subsequent to August 3, 1936, for which appellant would pay in other than free or gold reichsmarks.

On April 10, 1937, appellant obtained the Aski marks, with which he paid for the importation, from a dealer in foreign currency exchange located in New York. It is not denied that the transaction placed the imported merchandise in the "bounty-fed" class.

It is clear that the imported merchandise was subject to countervailing duty under section 303 of the tariff act. *F. W. Woolworth Co. v. United States*, 28 C. C. P. A. (Customs) 239, C. A. D. 151. *V.*

*Mueller & Co.* v. *United States*, idem 249, C. A. D. 152. It is also clear that T. D. 48479, *supra*, did not repeal, revoke, nor destroy the validity of T. D. 48360, *supra*. T. D. 48479, *supra*, contains the statement that the collector shall be satisfied by documentary evidence that the contract of purchase was entered into subsequent to August 2, 1936. The statement that no countervailing duty would be assessed against the articles set out in T. D. 48360, *supra*, is based entirely upon the supposed fact that the sale of German commodities for export to this country would not be, subsequent to August 2, 1936, subject to any scrip or bond procedure and that "no public or private bounty or subsidy was or will be paid, and that the use of no German currency other than free gold exchange marks or free inland marks was or will be permitted."

Carbon copies of appellant's two orders for the involved goods, which are in evidence, contain the notation at the bottom thereof, "SHIP AT ONCE AGAINST BARTER OR ASKIMARKS."

The invoice and entry papers before the collector indicated that payment was to be made in reichsmarks without any specification of their type or kind. Probably if the collector had then known that payment was made in Aski marks, he might have at that time concluded that the transaction was not covered in T. D. 48479, *supra*.

In the light of what has been above set out, it is obvious appellant knew that the use of any other than free marks was prohibited in the instant transaction.

The Congress has declared by section 303 that all dutiable merchandise, when subject to bounty, shall pay a countervailing duty. The liability for the payment of such duty attached upon importation of the instant goods and the fact that its payment postponed such liability until liquidation does not affect the liability to pay. *Franklin Sugar Refining Co.* v. *United States*, 1 Ct. Cust. Appls. 242, T. D. 31276 (20 Treas. Dec. 236). *V. Mueller & Co.* v. *United States*, *supra*.

There is nothing in the section fixing any definite time within which the estimation or declaration of the net amount to be levied must be made. The ascertaining and estimating of it is a ministerial or administrative duty imposed upon the Secretary of the Treasury. When such finding has been made and the collectors advised thereof, as was done in this case, the collectors "ordinarily assess the amount as a countervailing duty, just as they assess legal duties in conformity with the rates fixed by statute." *V. Mueller & Co.* v. *United States*, *supra*. The estimation of the percentage of countervailing duty on thumbtacks under T. D. 48360, *supra*, was 31 per centum of the value thereof. Under our holding in the *Mueller* case, *supra*, that estimation would have been sufficient to fix the amount of countervailing duty even though the acting Secretary of the Treasury, on September 23,

1942, had not approved the net amount of bounty or grant on the involved merchandise made by the Commissioner of Customs in the sum of $75.17.

In view of what has been said herein, we hold that T. D. 48360, supra, was in full force and effect as far as the facts in this case are concerned and there is and can be no doubt that it did not become operative until after 30 days following its publication. Therefore, appellant's contention with respect to long-continued administrative practice falls.

In our view it is immaterial whether or not, under the facts in this case, the contract or agreement to purchase the thumbtacks was entered into either before or after August 2, 1936. T. D. 48479, supra, was by its very terms not intended to relieve from payment of countervailing duty any "bounty-fed" dutiable merchandise.

For the reasons herein set out the judgment of the United States Customs Court is affirmed.

HATFIELD, Judge, specially concurring:

In the case of V. Mueller & Co. v. United States, 28 C. C. P. A. (Customs) 249, C. A. D. 152, relied upon in the majority opinion, I concurred in the dissenting opinion written by Judge Lenroot, in which the view was expressed that T. D. 48360, quoted in the majority opinion and relied upon in the instant case, was not in conformity with the provisions of section 303 of the Tariff Act of 1930, in which it is stated, among other things that: "The Secretary of the Treasury shall from time to time ascertain and determine, or estimate, the net amount of each such bounty or grant, and shall declare the net amount so determined or estimated."

I am still of the opinion that T. D. 48360 is not in compliance with the quoted provision contained in section 303, supra.

Owing to the fact, however, that my views were fully set forth in the V. Mueller & Co. case, supra, and as the majority of the court disagreed therewith in that case and in the instant case, the law on the subject has been fully settled so far as this court is concerned.

There have been instances in the past where it was deemed proper, because of circumstances involved, to continue to express dissenting views. There are no such circumstances in the instant case. Accordingly, although adhering to the views expressed in the dissenting opinion in the V. Mueller & Co. case, supra, I feel compelled to yield to the majority of the court and hence concur in the views expressed in the majority opinion.